James H. HUTSON, Individually and in his official capacity as Shareholder and Director of Foresco, Inc., an Alabama Corporation, in Dissolution, Plaintiff–Appellant,

v.

FULGHAM INDUSTRIES, INC., Defendant–Appellee,

O.T. Fulgham, etc., et al., Defendants.

No. 88–7253.

United States Court of Appeals, Eleventh Circuit.

April 14, 1989.

William B. Lloyd, Pate, Lewis & Lloyd, Birmingham, Ala., for plaintiff-appellant.

Michael K. Beard, Rives & Peterson, Birmingham, Ala., for defendant-appellee.

Before JOHNSON and CLARK, Circuit Judges, and VINSON *, District Judge.

CLARK, Circuit Judge:

The issue in this appeal is whether a shareholder of a dissolved corporation has the right to bring contract and/or tort claims based on agreements the dissolved corporation had entered into with another corporation notwithstanding the expiration of the two-year wind-up period required under Alabama's corporate survival statute.

## BACKGROUND

Appellant James H. Hutson (Hutson) was the president and 50% shareholder of Foresco, Inc., an Alabama corporation which was formed on March 26, 1979. Edgardo and Melba Diaz owned the remaining 50% of Foresco's stock.[1]

On April 19, 1979, Fulgham Industries (Fulgham) entered into an agreement with Foresco for the design of 80 and 120 foot log cranes. Foresco was to provide designs which Fulgham would use in manufacturing the cranes. Fulgham was to pay $60,000 for each crane design ($20,000

down and five installments of $8,000 upon the sale of the first five cranes of each design) plus 5% of the sales price on each additional crane manufactured and sold during the period of five years from the date of the sale of the sixth crane.

Hutson claims that Foresco completed its performance under the contract in 1979 by providing design drawings for the 80 and 120 foot cranes. In addition to provision of the design drawings, the contract requires Foresco to provide foundation drawings for the installation of the cranes. Record, Vol. 1, Tab 26 at 15–16. Fulgham counters that because Foresco may have these additional obligations under the contract, the contract is not fully performed. Fulgham further asserts that the contract is not assignable because it requires personal services (i.e. design drawings).

Fulgham performed under the contract during 1979 and made payments to Foresco through October 1983. Fulgham states that it has paid all amounts due under the 1979 agreement including the following payments: $40,000 in down payments, $24,000 for three 80 foot cranes, and $40,000 plus royalty for eleven 120 foot cranes. Record, Vol. 1, Tab 26.

On November 24, 1982, Hutson initiated proceedings to dissolve Foresco. He filed a bill of equity in the Circuit Court, Tenth Judicial Circuit of Alabama, Equity Division, against Foresco and the Diazes requesting that the court appoint a receiver to "collect the assets of the corporation and to administer the executory contracts of the corporation" and to dissolve Foresco and liquidate and distribute its assets to the three shareholders.[2] In particular, Hutson claimed that Edgardo Diaz threatened to convert corporate assets, executory contracts for the sale of goods and con-

---

* Honorable Roger Vinson, U.S. District Judge for the Northern District of Florida, sitting by designation.

1. Edgardo Diaz owned 49 of Foresco's 100 outstanding shares and was also a director and vice-president in Foresco. Melba Diaz owned one share and was a director and Secretary/Treasurer of the corporation.

2. Hutson claimed that the Diazes "engaged in a course of conduct detrimental to the corporation," "appropriated assets of the corporation for their own use," and "engaged in fraudulent, illegal and oppressive behavior." First Supp. Record, Vol. 1, Tab 17 at A2. The Diazes had two-thirds of the board's votes and, according to Hutson, used this power to engage in a course of self-dealing to the detriment of the corporation and Hutson.

tracts for the design of industrial products, to his own personal use.[3] Diaz cross-claimed for wages he alleged Foresco owed him for past labor.

The circuit court issued an order on February 4, 1983 stating that the parties had until February 17 to resolve their disputes. The circuit court then appointed receivers to collect all amounts due Foresco. Fulgham states that it made payments to the receivers during this time. On February 21, 1983, Hutson and the Diazes entered into a dissolution agreement which distributed Foresco's net assets among themselves. These assets included "inventory, equipment, engineering drawings, accounts receivable, and executory contracts."[4] Notably, neither the inventory list nor the shareholders' agreement explicitly identified any corporate contracts, executory or otherwise.[5] The circuit court's March 11, 1983 order adopted this agreement. After adopting the receivers' petition for Final Settlement,[6] the court issued its Judgment of Dissolution on October 1, 1984.[7]

On May 19, 1987, Hutson filed this action in Alabama state court against Fulgham Industries to collect payments allegedly owed under the 1979 agreement.[8] Hutson further asserted that Fulgham falsely or fraudulently breached the agreement by making slight alterations to the crane designs to avoid paying the five percent royalty. Finally, Hutson alleged that Fulgham converted the designs for its own use and tortiously interfered with Hutson's business opportunities.

The action was removed to federal court on June 19, 1987. Fulgham filed a motion for summary judgment stating that Foresco had been judicially dissolved and its corporate obligations, therefore, had been extinguished. Fulgham also contended, in the alternative, that Hutson's claims were precluded because they were not asserted during the two-year wind-up period following dissolution as provided by the corporate dissolution statute.

The district court rejected Hutson's argument that he, as an individual, could pursue Foresco's contract and tort actions because the corporate dissolution provisions did not apply to him in an individual capacity. The court stated the crucial inquiry was the "nature of the claims [Hutson] acquired. [Hutson] must show that the dissolution of Foresco and the distribution of its assets placed in his hands a claim in the nature of a 'property right.'" Record, Vol. 1, Tab 29 at 6. The court distinguished between "corporate claims reduced to judgment" and "never-asserted corporate claims." The court held that a shareholder of a dissolved corporation may assert the former claims but not the latter because the only judicial proceeding necessary in the latter is a mere collection. Because the district court found Hutson's contract and tort claims to be "never-asserted corporate claims," the court entered summary judgment for Fulgham on April 1, 1988 ruling that Hutson's claims were barred either by the Alabama corporate survival statute or under Alabama's common law. Hutson filed a timely appeal.

This appeal brings into conflict two competing legal principles. The first is reflected in the general equitable rule that former shareholders of a dissolved corporation succeed, in their individual capacities, to title to certain classes of assets the corporation owned prior to dissolution. The second arises from Alabama's corpo-

3. *Id.* at 3–4.

4. First Supp.Record, Vol. 1, Tab 17 at E1 (Dissolution Agreement).

5. The Dissolution Agreement, however, specified that Hutson and Diaz were both "entitled to a set of cepia drawings of the engineering drawings owned by the corporation" the cost of which the corporation was to bear. *Id.* at E1.

6. The Petition stated that the receivers had collected all amounts due Foresco that the parties had specified and were deemed collectible. First Supp.Record, Vol. 1, Tab 17, at J.

7. The court directed that a certified copy of this order be filed with the probate judge as required under Ala.Code, § 10–2A–201 (1987).

8. Hutson also included O.T. Fulgham as a named defendant. The district court, however, granted O.T. Fulgham's motion to dismiss based on lack of in personam jurisdiction leaving only Fulgham to defend the action.

rate survival statute whose purpose is to extend a corporation's legal life a limited time to wind-up corporate affairs. These two principles are based on differing rationales, the former on equitable grounds the latter on efficiency grounds. We are cognizant that the Alabama courts have not addressed the interaction of these two principles based on facts similar to those in this case. Thus, we must deduce our conclusions from the reasoning underlying Alabama's common law dissolution cases and the purposes for which Alabama adopted its corporate survival statutes.

## I. Alabama's Corporate Dissolution Statute

Alabama's current statutory framework governing corporate dissolutions parallels the provisions of the Model Business Corporation Act (Model Act). Ala.Code, §§ 10–2A–180 to –203 (1987); Model Bus. Corp.Act, § 82–105 (1979).[9] In particular, its corporate survival statute is identical to section 105 of the Model Act. Ala.Code, § 10–2A–203 (1987). The purpose of Alabama's survival statute is to provide a two year period in which to wind-up corporate affairs following the dissolution of a corporation.[10] The statute, in pertinent part, provides that:

> The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by a probate judge; or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this chapter, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of dissolution.... The shareholders, directors and officers shall have power to take such corporate or

other action as shall be appropriate to protect such remedy, right or claim.

*Id.* The statute acts as a limitation upon the capacity of the corporation to sue or to be sued rather than as a statute of limitation. *See* W. Fletcher, Vol. 16A, Cyclopedia of the Law of Private Corporations, § 8144, at 459 (1988). Thus, the statute extinguishes the corporate rights, remedies and claims a dissolved corporation, and its shareholders, directors and officers fail to bring within the two year wind-up period. *Id.* at 459–60; *MBC, Inc. v. Engel,* 119 N.H. 8, 397 A.2d 636, 639 (1979). The statute, however, does not supplant the equitable rule that shareholders succeed to certain classes of a dissolved corporation's assets. Fletcher, *supra* § 8144 at 411–12, 460. These shareholders may then maintain an action to recover such assets beyond the statutory wind-up period. *Id.* at 460; *see, e.g., Jenot v. White Mountain Acceptance Corp.,* 124 N.H. 701, 474 A.2d 1382, 1386 (1984) (survival statute does not extinguish claims based on corporate asset acquired by equitable principles brought in individual capacity after dissolution).

Fulgham makes two arguments regarding the statute's application. First, Fulgham argues that Foresco was dissolved by judicial decree rendering the survival statute inapplicable. Fulgham implicitly argues that the circuit court conducted a dissolution proceeding outside the statute's parameters and, therefore, the common law rule that extinguishes all unasserted corporate obligations applies to extinguish Hutson's claims. *See Nelson v. Hubbard,* 96 Ala. 238, 244, 243–44, 11 So. 428, 429, 431 (1891) (dissolution is the "death of corporation" precluding further actions by or against it; judicial proceeding against dissolved corporation must follow course prescribed by statute). Second, and alternatively, Fulgham argues that any claim that Foresco, its shareholders, directors, or officers could have brought on behalf of the corporation should have been within the two years provided for in the survival stat-

---

9. In 1980, Alabama adopted the Alabama Business Corporation Act, Act No. 80–633, which is identical to the Model Act in large part.

10. Alabama previously had a one-step dissolution process with a five-year period in which the winding up of corporate affairs took place. Ala. Code, § 10–2–212 (1975).

ute. Fulgham's argument is that allowing Hutson to bring this action beyond the two-year period frustrates the survival statute's purpose which is to provide a two-year period to definitively wind-up corporate affairs.

■ Fulgham's first argument is erroneous. Although the survival statute's predecessor did not apply to judicial dissolutions,[11] the current statute does not have such an exclusion. The circuit court properly complied with the relevant statutory provisions placing this dissolution proceeding squarely within the current dissolution statutes. After complying with the appropriate dissolution provisions, the court directed that a certificate of dissolution be issued to the probate judge as required under § 10–2A–203(2). Thus, the two-year survival statute is applicable.

Fulgham's second argument is that even if the dissolution is within the statutory framework, Hutson, the corporation, or its shareholders failed to bring the disputed claims within the two-year wind-up period. The statute makes clear that the corporation or its shareholders, directors or officers must commence existing corporate claims, whether in contract or tort, within the two year wind-up period to survive dissolution. It is undisputed that neither Foresco nor its shareholders or directors asserted within the two-year period the contract and tort claims Hutson, now in his individual capacity, asserts. These corporate claims, therefore, are extinguished unless they are the types of corporate assets that devolve to shareholders upon dissolution.

## II. Equitable Rule that Former Shareholders Accede to Assets of Dissolved Corporation

The equitable principle that former shareholders have the right to a fair share of assets in a dissolved corporation is well-established in many states. Fletcher, *supra*, § 8134 at 411, n. 3.

On the dissolution of such a corporation, whether by expiration of its charter, by a judgment of forfeiture, or otherwise, it is considered in equity, even in the absence of any statute, that its assets are held for the benefit of its stockholders or members, after payment of its debts, and will be so distributed by a court of equity when no other mode of distribution is provided for by statute.

*Id.* § 8134 at 411. The type of corporate "asset" which devolves to former shareholders is primarily claims to title in some fixed corporate asset or real property. *See, e.g., Reuter v. Mobile Bldg. & Constr. Trades Council,* 274 Ala. 614, 617, 150 So.2d 699, 702 (1963) (shareholder in defunct corporation has "equitable" interest in corporation's real property permitting redemption of mortgage); *see generally* Fletcher, *supra* § 8134. Some jurisdictions have expanded the rule's application to other forms of corporate assets. *See, e.g., Jenot v. White Mountain Acceptance Corp.,* 124 N.H. 701, 474 A.2d 1382 (1984) (shareholders have right to foreclose on corporation's mortgage and promissory note following dissolution). The equitable rule states that after dissolution the former shareholders *in their individual capacity* may then bring claims for the corporate property. *Jenot, supra* 474 A.2d at 1386. The rule, however, does not apply to derivative claims that shareholders could have asserted in their capacity as shareholders. *See, e.g., Canadian Ace Brewing v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183, 1185–87 (7th Cir.1980) (antitrust action against dissolved corporation's competitors not actionable after wind-up period). Thus, the classes of assets that courts have held devolve to shareholders upon dissolution are primarily interests in tangible real and personal property and corporate claims asserted within the wind-up period.

The issue in this case is whether Foresco possessed any corporate assets to which Hutson, as a former Foresco shareholder, became legally entitled upon Foresco's dissolution. Hutson claims that he was either assigned the rights in the contract pursuant to the Dissolution Agreement or that the rights devolved to him by operation of

---

11. Ala.Code, § 10–2–212 (1975).

law upon the corporation's expiration. Because our review of the record fails to establish that an assignment occurred, we address only the latter assertion.[12]

III. Whether Hutson possesses a property right which he received by operation of law?

The critical inquiry is whether Hutson in his capacity as a shareholder acquired any legally recognized property rights by operation of equitable principles of law following Foresco's dissolution. Because Hutson asserts two claims, one based on a right to damages arising from Fulgham's allegedly tortious conduct and another based upon a right to payments under the contract with Fulgham, the nature of Hutson's alleged property interests are different requiring separate inquiries. We address Hutson's contract claims first.

A. *Contract Claims*

■ Whether Hutson may assert claims based on the contract between Foresco and Fulgham depends upon whether an unasserted corporate contract claims are legally recognized "property rights" that devolve to shareholders upon dissolution. Hutson asserts that the district court erred as a matter of law in barring him in his individual capacity from enforcing the contract between Fulgham and Foresco. He argues that Foresco has fully performed under the agreement with Fulgham requiring only Fulgham's payment of royalties. Hutson draws an analogy between the collection of royalties under an executed contract and the collection of a corporate claim reduced to judgment. Fulgham, however, asserts that the contract was not fully performed

because Foresco had further duties to perform under the agreement.[13]

Fulgham argues that a literal reading of Alabama's corporate survival statute requires that unasserted corporate claims expire unless brought within the two-year wind-up period. Fulgham's argument is based on the survival statute's purpose which is to provide a definitive period for resolving claims by and against a dissolved corporation and, in particular, to permit a dissolved corporation to collect revenues owed to it under corporate contract claims. In addition, Fulgham asserts that no case law exists that recognizes an unasserted corporate contract as a "property interest" that devolves to shareholders following dissolution.

Hutson relies heavily upon *Jenot v. White Mountain Acceptance Corp.*, 124 N.H. 701, 474 A.2d 1382 (1984), a case in which the New Hampshire Supreme Court held that:

> when a corporation has failed to exercise its right to foreclose a mortgage and enforce a promissory note within the three year wind-up period, the right to the mortgage and promissory note automatically descends to the former shareholders suing in their individual capacity.

*Id.* 474 A.2d at 1386. The *Jenot* court distinguished its holding from that in *MBC, Inc., supra,* noting that corporate survival statutes were not intended "to supplant the equitable rule that former shareholders succeed to the assets of a dissolved corporation." *Id.*

■ We agree with the *Jenot* court's distinction on this latter point. We are unwilling, however, to extend the equitable rule so far as to recognize a "property

---

**12.** The purported assignment was pursuant to the Dissolution Agreement Hutson and the Diazes entered which distributed Foresco's net assets among themselves. First Supp.Record, Vol. 1, Tab 17 at E1 (Dissolution Agreement). Because neither the inventory list nor the shareholders' agreement explicitly identified any corporate contracts, executory or otherwise, there is doubt as to which contracts were assigned and whether such an assignment was valid. We therefore affirm the trial court's holding that no assignment occurred. In addition, we need not address Fulgham's assertion that the contract is

not assignable because it requires personal services.

**13.** For example, the contract required that Foresco provide standard foundation drawings within 90 days from the date of the contract unless Fulgham was unable to use these drawings to meet particular foundation requirements. In these latter situations, Foresco would have to provide a modified foundation drawing following soil tests at the installation sight. Second Supp.Record, Vol. 1, Tab 31 at 6–7.

interest" in an unasserted corporate contract claim which involves evidentiary problems and factual disputes.[14] We agree with the *MBC, Inc.* court that:

> [t]he policy behind the [survival] statute is favored over the ends of particularized justice. To allow lawsuits involving a dissolved corporation to commence in contravention of a clearly expressed legislative policy would thwart the orderly process of corporate dissolution conceived by that policy. It would 'produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.'

*MBC, Inc.*, 397 A.2d at 639. In the district court's words, extending the equitable rule to such claims would "render the wind-up statute a nullity" and the "two-year time period bars nothing." Memorandum Opinion, April 1, 1988, at 5–6. We hold that such claims must be asserted within the wind-up period (or be properly assigned) to survive dissolution.[15]

We further agree with the district court's salient observation that this action "is one which cries out for the application of a rule extinguishing corporate claims either on dissolution or within a fixed time thereafter." Memorandum Opinion, April 1, 1988, at 8. We note that Alabama's survival statute explicitly provides that "dissolution shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is *commenced within two years after the date of dissolution.*" Ala.Code § 10–2A–203 (1987). Thus, Hutson and the Diazes (as Foresco officers, directors and principal shareholders) had two years in which to initiate proceedings to protect Foresco's remedies, rights or claims under the contract with Fulgham.[16] Their failure to promptly assert such claims or to properly effectuate an assignment pursuant to their dissolution agreement renders such claims nugatory.[17]

### B. *Tort Claims*

■ Hutson also alleges that Fulgham committed fraud by slightly altering the design drawings to construct 78 foot and 125 foot cranes (instead of the 80 and 120 foot cranes contemplated under the contract). Fulgham denies it committed any tortious act and further asserts that the survival statute extinguished this unasserted corporate claim because it was not brought within the two-year wind-up period.

**14.** Both parties make a distinction between whether the agreement is executed or executory. As the district court noted, because the parties dispute whether the contract was breached this case is "[o]bviously not [one] where a settled sum is owed to a corporation and the only action a shareholder need take is one of simple collection." Memorandum Opinion, April 1, 1988 at 8. Thus, we do not base our holding on the distinction between executory and executed contracts. Instead, we agree with the district court that under the facts of this case, the agreement between Foresco and Fulgham is not a "property right" that devolves to shareholders upon a corporation's dissolution because it is not analogous to those classes of assets to which the equitable rule applies (e.g. real or personal property or a fixed liability or liquidated debt).

**15.** The *Jenot* court stated that a formal assignment of a corporate asset during the wind-up period is unnecessary for a shareholder to later enforce his rights to the asset following the wind-up period. 474 A.2d at 1387. We agree that a corporation need not assign certain corporate property during the wind-up period because the equitable rule operates to transfer such property into shareholders' hands upon the expiration of the wind-up period. Our holding merely declines to include unasserted corporate contract claims within the equitable rule's operation. The survival statute would have little practical effect otherwise.

**16.** Had Foresco or its officers or shareholders initiated the contract claim during the statutory two-year period and then assigned it to Hutson, he could now claim that he is entitled to pursue the claim to judgment. Also, Foresco could have amended its articles of incorporation during the two-year period extending its duration in order to pursue the contract or tort claims. Ala.Code § 10–2A–203 (1987).

**17.** In addition, although the court-appointed receivers had the opportunity to collect payments due under the contract, they failed to do so. They later informed the circuit court that they had collected all monies due Foresco (except for one unrelated account). First Supp.Record, Vol. 1, Tab 17, at J.

Fulgham's position must prevail. The accepted rule in jurisdictions which have adopted corporate survival statutes is that corporate claims reduced to judgment in which only a mere collection is necessary are "assets" which devolve to former shareholders in a dissolved corporation. Fletcher, *supra* § 8139 at 427.

> A corporate claim which has been reduced to judgment is to be distinguished from a claim which has never been asserted. A claim which has been reduced to judgment is similar to a debt, and such a claim, passing to the shareholders as their distribution of the property of the corporation, may form the basis for a cause of action despite the fact that the statutory period of continuation has passed.

*Id.* Hutson's fraud claim, which is based on a tort committed against Foresco, falls into a category of corporate claims that the survival statute clearly intended to prohibit after the wind-up period. This unasserted corporate claim should have been brought during the two year wind-up period because, as one court has noted, "[t]he expired right is no more enforceable in the former shareholders' possession than it is in the defunct corporation's." *MBC, Inc. v. Engel*, 119 N.H. 8, 397 A.2d 636, 639 (1979) (interpretation of New Hampshire's survival which parallels the Model Act's provisions). Thus, the district court properly held that Hutson could not maintain his tort claims.[18]

## SUMMARY

We conclude that the district court did not err in granting summary judgment in Fulgham's favor under the facts of this case. Our conclusion supports the purpose of Alabama's corporate survival statute which is to provide a two-year period in which to definitively wind-up corporate affairs and concurrently retains the equitable rule that fixed corporate assets and real property pass to former shareholders following expiration of the wind-up period. The district court's order is AFFIRMED.

VINSON, District Judge, dissenting:

I agree with the majority's analysis and conclusion regarding Foresco's corporate claims being extinguished by Section 10–2A–203, *Alabama Code* (1975), but I respectfully dissent with respect to Hutson's individual claims.

As the majority acknowledges, the issue in this case is whether Foresco's contractual right to receive payments from Fulgham's future use of the designs and drawings for the two models of log cranes constituted a property right to which Hutson, as a former Foresco shareholder, became legally entitled upon Foresco's dissolution. In my opinion, it did. Therefore, I reach a conclusion contrary to the majority's.

(1) *What was the nature of Foresco's contractual interest?* The record is undisputed that, pursuant to the contracts in question, Foresco completed the design of both the 80 and 120 foot cranes in 1979, and provided design drawings for each model to Fulgham. Fulgham then proceeded to make the required payments to Foresco through October 1983 for three of the 80 foot cranes, and for eleven of the 120 foot cranes. Under the agreements, it appears that additional cranes manufactured and sold by Fulgham pursuant to the agreements would trigger required payments of $8,000 for each of the next two 80 foot cranes or 5% of the sales price for each additional 120 foot crane and each 80 foot crane in excess of two (within 5 years after the sale of the sixth crane of each type). On its face, therefore, Foresco's contractual interest seems to be a right to receive payments, measured by the use of the designs in each crane manufactured and sold. The sole determinant of payment would be Fulgham's sale of either model of crane. This seems to be squarely within the general definition of "royalty:"

---

**18.** In addition, because we hold that Foresco's unasserted rights under the contract with Fulgham did not devolve to Hutson upon Foresco's dissolution, Hutson cannot now assert that Fulgham committed a tort against him personal-ly. Hutson does not own any interest in the unasserted contract claims; he, therefore, cannot assert any tort claims against Fulgham arising from breaches of the Foresco–Fulgham agreement.

A payment which is made to an author or composer by an assignee or licensee in respect of each copy of his work which is sold, or to an inventor in respect of each article sold under the patent.

> *Black's Law Dictionary* (Rev. 4th ed. 1968)

Fulgham maintains that because Foresco may have additional obligations under the contracts, the contracts have not been fully performed by Foresco. Fulgham also asserts that the contracts are not assignable because they require personal services. Therefore, Fulgham's position is that the contracts are not property rights capable of assignment or succession to Foresco's stockholders upon its dissolution. Unlike the majority, I cannot agree. It is of importance that Fulgham's argument regarding additional services required of Foresco was not asserted in its answer or in any pleadings before the trial court, and the trial court's "memorandum of decision" conspicuously omits reference to such an assertion. The argument seems to have been raised for the first time on appeal. At most, Fulgham's argument raises an issue of material fact, precluding summary judgment and necessitating reversal. Similarly, although the majority finds it unnecessary to address, further personal services are not required, and the royalty right under the contract is freely assignable, if the only determinant of payment is the use of the designs by Fulgham in manufacturing and selling additional cranes.

In short, my analysis of the evidence in the record leads me to conclude either that Foresco had completed essentially all of its obligations under the agreement, so that all that remained was for Fulgham to pay the production payments called for if any additional cranes were manufactured and sold, or that there is a genuine issue of material fact regarding whether Foresco had done so. In either event, Hutson's claim should not have been barred by summary judgment if he is a proper owner of the right to receive payment under the executed agreements. *United States Fidelity & Guaranty Co. v. R.S. Armstrong & Brothers*, 225 Ala. 276, 142 So. 576, 577 (1932).

I can find no basis to distinguish the right to receive future production payments as contemplated by the agreements in this case from the right to receive future royalties or payments from other forms of intellectual property, such as under a copyright, trademark, patent, or licensing agreement.

The majority declines to recognize a "property interest" in an "unasserted corporate contract claim which involves evidentiary problems and factual disputes." To me, it is of no consequence that the class of asset involved in this case is not real or tangible personal property, a fixed liability, or a liquidated debt. Foresco's right to payment was simply a form of royalty asset, and it was just as well defined and assignable as a patent or copyright. If an interest in that royalty passed to Hutson upon Foresco's dissolution, then Hutson is entitled to pursue his legal rights therein. For example, the purchaser or assignee of the copyright to a musical composition is entitled to pursue his legal right to payment for performance of the song, even from one who factually disputes that the performance is within the copyright or that the copyright was properly perfected. Thus, an underlying dispute between the parties as to whether the contracts have been fully performed, or whether the cranes were manufactured (or manufacturable) in accordance with the designs, does not render the asset into a corporate claim; instead, it merely places the assignee's individual right to recover into question.

(2) *Did Hutson succeed to an interest in Foresco's contractual right to receive production payments?* The answer to this question, of course, is dependent upon a determination of the nature of asset involved. As discussed above, I have reached a different conclusion from the majority regarding the class of asset. Consequently, I reach a different conclusion on Hutson's succession. Nevertheless, the legal authorities cited by the majority make it very clear that shareholders have the right to share assets of a dissolved corporation, even in the absence of an expressed assignment. I need not, and will not, ad-

dress that equitable principle further, except to note that it results in Hutson presently having an enforceable property right, assertable against Fulgham.

Both the trial court and the majority seem to find support for the conclusion they reach from the fact that the operation of Section 203 is not "unfair" to Hutson. This is apparently premised on the concept that if Hutson "suspected a breach by Fulgham he should have notified the receivers of the claim prior to the time dissolution was finalized." [See "Memorandum of Decision," p. 9] On the contrary, in my opinion inventorying assets in a corporate dissolution is usually very much like inventorying assets in a decedent's estate. Quite often, an asset is overlooked or, as apparently occurred here, was deemed at the time to be of no further value. The asset does not disappear, however, nor is it ordinarily escheated. When it is later "discovered," or found to be of value, it may be claimed by the rightful owner. Ideally, a prudent practitioner will remove any future uncertainty by insuring that an expressed assignment of all remaining non-specified assets is made. But Hutson's failure to identify the right to future payments from Fulgham before the dissolution was finalized, or to have that right specifically assigned to him and Diaz, does not defeat his entitlement to the asset or constitute some form of "unclean hands." I fail to see any way that it can, as a matter of law, bar Hutson's claim.

In my view, the right to payment from Fulgham was a fully matured property right prior to dissolution. An interest in that right passed to Hutson at dissolution. Hutson's standing and right to attempt to collect that royalty is unaffected by the corporate survival statute.

(3) *Can Hutson assert a fraud claim against Fulgham?* To the extent that Hutson, in a representative capacity, asserts fraud claims allegedly committed against Foresco, I agree with the majority that the survival statute bars them. But, as the majority's footnote (18) addresses, Hutson also may have a personal cause of action for any fraud that Fulgham may have been committed with regard to his individual right to receive royalty payments. If, as I have attempted to set out above, Hutson did succeed to a property right to receive royalty payments under the agreement, then clearly he has the right to assert a claim that Fulgham committed fraud upon Hutson by slightly altering the design drawings to construct 78 foot and 125 foot cranes, instead of the 80 and 120 foot cranes contemplated under the agreement.

(4) *Conclusion.* In my opinion, Section 10–2A–203, *Alabama Code* (1975) has only limited application to this case: to the attempt by Hutson to bring claims in a representative capacity on behalf of Foresco, Inc., a dissolved Alabama corporation. It bars all claims on behalf of the corporation. But, on the other hand, the corporation's right to receive future royalty payments was a matured asset or "property interest," freely alienable, to which Hutson received an interest by operation of law upon the dissolution of the corporation. Therefore, Hutson, individually, is not prohibited by the corporate succession statute from asserting both his claim to a royalty payment and his claim for fraud in connection with the right to a royalty. To the extent that there may be some factual question raised about Foresco's continuing obligation with respect to its designs, thereby affecting the legal characterization of the asset, that would be a genuine issue of material fact precluding summary judgment under Rule 56, Federal Rules of Civil Procedure. I would reverse and remand.