Donald L. DAVIS, Richard L. Culbert, John B. Davis, Laura Davis Keppen, M. Diane Davis Davey, Daniel C. Davis, Douglas S. Culbert, Patricia A. Culbert and Gunhild M. Eldridge, Plaintiffs,

v.

The ST. PAUL FIRE & MARINE INSURANCE COMPANY, a corporation, Defendant.

Civ. No. 88–4059.

United States District Court, D. South Dakota, S.D.

Dec. 14, 1989.

Curtis E. Wallum, Sioux Falls, S.D., for plaintiffs.

Bethany K. Culp, Oppenheimmer, Woff & Donnelly, St. Paul, Minn., Acie W. Matthews, Pruitt, Matthews & Muilenberg, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION and ORDER

JOHN B. JONES, District Judge.

### FACTS

Culbert–Davis (C.D.) was an independent insurance agency which placed policies with St. Paul Fire & Marine Insurance Company (S.P.F.M.). On January 1, 1962, C.D. and S.P.F.M. entered into an agency incentive agreement that provided additional compensation to C.D. based on the relationship between the loss ratio of insurance placed by C.D. and the premium value of particular types of insurance. Certain types of policy premiums and losses were excluded from the incentive agreement calculations. Among those specifically excluded were premiums for "risks written in excess and surplus lines department."

At the time of the incentive agreement S.P.F.M. was issuing policies for medical malpractice with limits of $100,000/300,000. Additional or "excess" limits of $700,000 could also be purchased. As per the agreement, the $700,000 excess was not used in determining the amount due under the agency incentive agreement. In July of 1978 S.P.F.M. began offering a primary medical malpractice policy with limits up to $1 million. However, S.P.F.M. did not include the premiums attributable to any amount over $300,000 for purposes of the incentive payment calculations, despite the fact that the $1 million policy was sold as a single primary policy.

Until 1984, C.D. made no objection about the cutoff for malpractice premiums being $300,000. In December of that year Donald Davis contacted S.P.F.M. and told them that C.D. felt they were entitled to have the full premiums from the malpractice policies included for purposes of the agency incentive agreement. S.P.F.M. wrote back saying that $700,000 of those $1 million primary policies were being considered "risks written in the excess department" and therefore excludable when figuring incentive payments. C.D. did not pursue the matter at that time.

On December 10, 1985, C.D. assigned all assets, causes of action, and other tangible or intangible rights of the corporation to the group of shareholders who are the plaintiffs in this action. C.D. corporation was dissolved on December 11, 1985. On December 28, 1987, Donald Davis, on behalf of the plaintiffs, sent a letter to S.P.F.M. demanding additional incentive payments for the medical malpractice premiums from 1978–1985. S.P.F.M. denied all obligations, but in order to facilitate negotiations agreed to waive any statute of limitations defense that had not accrued before February 1, 1988, and provided the waiver for any actions that would be barred from February 1, 1988 through March 11, 1988. The waiver was later extended through April 1, 1988.

When the parties were unable to reach an agreement through negotiations, plaintiffs began this action in South Dakota State Court on March 29, 1988 and the case was removed to this Court by motion of the defendant on the basis of diversity. Plaintiff and defendant cross-motioned for summary judgment and oral argument was heard September 18, 1989 on both motions.

For the reasons set forth in the opinion below, the Court finds that the Davis claim is not a property right brought in the shareholder's individual capacities, but is a derivative corporate action that did not survive past the two-year post dissolution period set by S.D.C.L. 47–7–50. Because this action did not survive past December, 1987, it will be unnecessary to address the other motions in this case.

### DISCUSSION

At common law a corporation's ability to sue or be sued terminated when the corpo-

ration was legally dissolved. *Canadian Ace Brewing v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1185 (1980) (citing to 16A W. Fletcher, Cyclopedia of The Law of Private Corporations § 8142 (1979)). Therefore, corporate survival statutes patterned after the Model Business Corporation Act § 105 were enacted to allow limited winding up time for corporate affairs. 19 Am.Jur.2d Corp. § 2896 (1986).

S.D.C.L. 47–7–50, which tracks the Model Act, states:

> 47–7–50. Other remedies unaffected— Time for bringing other action—Procedure. The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.

There is no South Dakota case law interpreting S.D.C.L. 47–7–50, but the South Dakota Supreme Court interprets uniform laws such as the Model Business Corporation Act "to effectuate its general purpose to make uniform the law of these states which enact it." *Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649, 653 (S.D. 1988) (citing to S.D.C.L. 2–14–13). Therefore, the interpretation given other states' corporate survival laws by their courts is indicative of how South Dakota would apply S.D.C.L. 47–7–50.

Other jurisdictions interpreting corporate survival statutes adopted from the Model Business Corporation Act have found such statutes to be survival statutes as opposed to statutes of limitation. 19 Am.Jur.2d Corp. § 2879 (1988) (footnote omitted). The distinction is that a statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute. *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14, 15 (1985). These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation's existence to be asserted. *Hutson v. Fulgham Ind., Inc.*, 869 F.2d 1457, 1460 (11th Cir.1989) (citing Vol. 16A Fletcher, Cyclopedia of The Law of Private Corporation § 8144 (1988)). These statutes also prevent a corporation from escaping its creditors by dissolution. *Canadian Ace Brewing v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1184 (7th Cir.1980).

■ However, the arbitrary extension of corporate life is limited and unless action is brought within the statutory time, a claim or right that exists as an outgrowth of shareholder status dies and capacity to bring suit is destroyed. *Hutson*, 869 F.2d at 1463; *Van Pelt*, 364 N.W.2d at 20. By the terms of these statutes, they are applicable not only to the corporation itself, but to its directors and shareholders. *Canadian Ace*, 629 F.2d at 1186; S.D.C.L. 47–7–50.

The actions which have their origins within corporate existence but which have survived past the winding up period, are of two types: (a) those actions brought in an individual capacity for a personal wrong, *Hunter v. Old Ben Coal Co.*, 844 F.2d 428 (7th Cir.1988); and (b) ascertainable or previously asserted claims which have the character of a tangible property asset and which have devolved by law or been assigned to the shareholders. *Jenot v. White Mountain Acceptance Corp.* 124 N.H. 701, 474 A.2d 1382 (1984); *Hutson*, 869 F.2d at 1462; *See Generally;* 19 Am.Jur.2d Corp. § 2897 (Footnotes omitted). These two exceptions are consistent with the purpose of the corporate survival statutes since any action brought as a result of injury to an individual is not a claim resulting from any actions by the corporation. Similarly, the other party is not prejudiced by allowing a cause of action relating to collection of a tangible asset since the assignee of that

property has a fixed and identifiable right separate from the corporation's original right. Neither of these exceptions impair orderly winding up of corporate business and neither allows the corporation to escape its creditors through dissolution.

■ Therefore, if plaintiff's claim in the instant action is to survive past S.D.C.L. 47–7–50's two-year post dissolution extension, it must be found to be either an action for damages to the shareholders as individuals or a property asset properly assigned to the shareholders.

## A. Individual Shareholder Claims

When a claim is held individually by a shareholder, even if it arose from a corporate matter, the corporate survival statute is not even applicable. *Hunter v. Old Ben Coal Co.*, 844 F.2d 428, 435 (7th Cir.1988). An action is individual in nature when there has been a violation of a duty owed directly to an individual. *Id.* at 432 (holding 3rd party beneficiaries have individual breach of contract action). If the injury arose out of and is a consequence only of an injury to the corporation or if it is an action instituted only to redress a wrong done to the corporation, then the action is derivative only. 19 Am.Jur.2d Corp. § 2243–2250. *Cf. Burger for Wares v. Cox*, 372 N.W.2d 161, 165 (S.D.1985). (Holding tort injury is derivative if it is action to redress wrong done to another or is consequence of injury to another).

The action filed by Davis, et al. is clearly derivational in character. The plaintiffs have made no showing that they were third-party beneficiaries with special duties owed to them individually as was the case in *Hunter*. The contract with St. Paul was for the benefit of the Culbert–Davis Corporation as a whole. Except for the corporation's rights under the contract, there are no contract rights to be asserted. All shareholders were injured equally and the shareholders in the present action have no individual rights unless this court finds, as plaintiff urges, that an unasserted contract claim is a legally recognized property interest.

## B. Property Interest

As plaintiff points out, there are several jurisdictions which have held that actions to recover property interests which had devolved to shareholders or were assigned to them are outside the scope of corporate survival statutes, *Jenot v. White Mountain Acceptance Corporation*, 124 NH 701, 474 A.2d 1382 (1984) (mortgage is property interest); *Shute v. Chambers*, 142 Ill.App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (1986) (note and purchase agreement are property interest); *Carmichael v. Halstead Nursing Center*, 237 Kan. 495, 701 P.2d 934 (1985) (action begun by corporation is maintainable by shareholders); *Levy v. Liebling*, 238 F.2d 505 (7th Cir.1956) (shareholders could begin action to collect judgment obtained by the corporation).

However, the court finds the present case to be unlike any of the above cited cases. This unasserted contract claim is not a ripened claim on which action was begun by the corporation, nor is it a tangible representation of a fixed ascertainable debt.

The *Carmichael* and *Levy* cases both involved claims on which action had been at least initiated within the survival period set by statute. That is entirely consistent with most corporate survival statutes. S.D.C.L. 47–7–50 would not prevent that type of claim since by its terms it does not bar actions which were begun within the survival period.

The *Jenot* and *Shute* cases both involved fixed and ascertainable debts that were evidenced by a document. The plaintiff claims *Shute* is most similar to their case but disregards the earlier *Koepke* decision from the same court. In *Koepke*, the court specifically found that an unasserted corporate contract claim was derivational in nature and would not survive past the corporate survival time period if an action was not begun on the claim within the survival time period. *Koepke v. First National Bank of DeKalb*, 5 Ill.App.3d 799, 284 N.E.2d 671 (1972).

Unlike a note or mortgage, an unasserted cause of action based on a breach of

contract claim is not a debt fixed in amount and evidenced by a document. It is not similar to a transfer of tangible property. As the 11th Circuit stated in the *Hutson* case, "We are unwilling ... to recognize a 'property interest' in an unasserted corporate contract claim which involves evidentiary problems and factual disputes." *Hutson,* 869 F.2d at 1463.

Allowing assertion of unexecuted or nascent claims past the time set by survival statutes would produce a "continuous dribble of business actions contrary to the intent of the winding up provisions." *Id.* (quoting *MBC, Inc. v. Engel,* 119 N.H. 8, 397 A.2d 636, 639 (1979)). Allowing pursuit of corporate claims which are merely embryonic beyond the winding up period would expand the corporate survival statute beyond its terms and would interfere with its purpose of requiring the prompt and orderly winding up and finalization of corporate affairs.

The assignees knew of the existence of the corporation's cause of action for the alleged breach of the Agency Incentive Agreement. They had two years from December 11, 1985 in which to institute an action for breach of contract but they failed to do so. Pursuant to S.D.C.L. 47–7–50, the right of action was no longer in existence on February 1, 1988.

Now therefore,

IT IS ORDERED:

(1) That plaintiffs' Motion for Summary Judgment is denied.

(2) That defendant's Motion for Summary Judgment is granted.

(3) That the Clerk of Courts is directed to enter judgment for the defendant.