D. Mark NIX, as Trustee for Bel Air Liqui-
dating Trust; East–West Beltline, Inc.,
and Bel Air. Corporation, Plaintiffs,

v.

W.R. GRACE & CO.—CONN. (previously
known as W.R. Grace & Co.); United
States Gypsum Company, and National
Gypsum Company, Defendants.

No. CV–92–0841–B–S.

United States District Court,
S.D. Alabama, S.D.

Aug. 12, 1993.

Judy M. Guice, Biloxi, MS, for plaintiff, D.
Mark Nix.

Roy C. Williams, Pascagoula, MS, Ray-
mond T. Cullen, Philadelphia, PA, Donald F.
Pierce, and Pamela K. Millsaps, Pierce, Carr
& Alford, Mobile, AL, for defendant U.S.
Gypsum Co.

Arthur F. Jernigan, Chuck D. Barlow,
Jackson, MS, Paul W. Brock, and Walter T.
Gilmer, Jr., Hand, Arendall, Bedsole,
Greaves & Johnston, Mobile, AL, for W.R.
Grace Co.—Conn.

### ORDER

BUTLER, District Judge.

This matter is before the Court on a mo-
tion for summary judgment filed by defen-
dant United States Gypsum Company ("U.S.
Gypsum") and on a motion for judgment on
the pleadings, or in the alternative, for sum-
mary judgment, filed by defendant W.R.
Grace Company—Conn. ("W.R. Grace")[1]
For the reasons set forth below, the Court
finds that all defendants are entitled to judg-
ment as a matter of law.

### Findings of Fact

This action arises from the discovery and
removal of asbestos from Bel Air Mall which
is located in Mobile Alabama. Plaintiffs in

1. In addition, W.R. Grace has filed a motion for
leave to amend its answer and to amend its
motion for judgment on the pleadings/summary
judgment to assert a defense under Ala.Code

§ 10–2A–203 (1975) based on plaintiffs' failure to
bring this action within two years of the dissolu-
tion of the Bel Air Corporation. That motion is
hereby **GRANTED.**

this action are D. Mark Nix, as trustee for Bel Air Liquidating Trust, East–West Beltline, Inc. and Bel Air Corporation. On December 27, 1984, Bel Air Corporation was legally merged into East–West Beltline, Inc., and East–West Beltline, Inc.'s name was changed to Bel Air Corporation. East–West Beltline, Inc. and Bel Air Corporation are, therefore, the same corporation. On January 2, 1987, Bel Air Corporation was legally dissolved. Following its dissolution, the remaining corporate assets of Bel Air Corporation were placed in a liquidating trust for the benefit of the former shareholders of Bel Air Corporation. Among the powers given to the trustee was the power to litigate or settle claims on behalf of the beneficiaries.

Plaintiffs have now filed three separate lawsuits arising from the removal of asbestos from Bel Air Mall. On December 18, 1987, these plaintiffs filed an action in the Circuit Court of Mobile County (hereinafter "Nix I"). In accordance with the *Alabama Rules of Civil Procedure*, plaintiffs also named certain fictitious defendants. On August 5, 1992, plaintiffs amended their state court action to add defendants W.R. Grace, U.S. Gypsum and National Gypsum as defendants in that action.

On January 19, 1989, plaintiffs filed an action in the United States District Court for the Southern District of Mississippi (hereinafter "Nix II") which was virtually identical to the action filed in Alabama state court. Following the transfer of Nix II to this Court, plaintiffs amended the complaint on September 7, 1990, to add defendants W.R. Grace, U.S. Gypsum and National Gypsum Company, all of which were manufacturers of asbestos products allegedly used in the construction of the mall.

On August 23, 1990, plaintiffs filed the instant action in the United States District Court for the Southern District of Mississippi (hereinafter "Nix III"). Again, Nix III is virtually identical to the two previously filed

action, the only difference being that W.R. Grace, United States Gypsum and National Gypsum are the only defendants in the latest action.[2] In Nix II, this Court ruled that plaintiffs' action was barred by Alabama's corporate survival statute which requires that suits brought by, or on behalf of, a dissolved corporation be brought within two years after the corporation's dissolution.

### Conclusions of Law

■ As in Nix II, the issue before the Court is whether this action is barred by Ala.Code § 10–2A–203 (1975), which specifies the time within which suit may be brought on behalf of a dissolved corporation. That statute which is commonly referred to as a corporate survival statute, states, in relevant part:

> The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if any action or other proceeding thereon is commenced within two years after the date of such dissolution.

*Id.* It is undisputed that the instant action was filed more than two years after the dissolution of the Bel Air Corporation.[3]

In response to the motion for summary judgment in this case, plaintiffs have adopted the same arguments they made in Nix II. First, plaintiffs contend that they have satisfied § 10–2A–203 by filing the state court abatement action within two years of the dissolution of the corporation. According to plaintiffs, since the statute requires only that "any action or other proceeding" on a claim be commenced within the two years, commencement of the state court action satisfied the two-year limitations period for all future proceedings on their asbestos abatement claims.

---

**2.** Apparently, the instant action was filed in anticipation of a potential statute of limitations problem in *Nix* II. Among the issues raised by defendant W.R. Grace in its motion for summary judgment in *Nix* II was whether the claims against defendants added after the transfer were subject to the Alabama statute of limitations,

rather than the more favorable Mississippi statute. The defendants in the *Nix* III were all added to *Nix* II after the transfer.

**3.** The corporation was dissolved on January 2, 1987. This action was filed on August 23, 1990.

Those courts which have addressed similar fact situations have held that filing a suit in one jurisdiction does not toll the corporate wind-up period under the applicable survival statute to permit an otherwise untimely suit in another jurisdiction. In *MBC v. Engel*, 119 N.H. 8, 397 A.2d 636 (1979), the plaintiff, a dissolved corporation, filed a federal court action within the three years permitted under New Hampshire's corporate survival statute. After the federal action was dismissed, plaintiff filed a state court action almost identical to the federal court action. The latter action was filed more than three years after the corporation's dissolution. In that case, the plaintiff, like plaintiffs in the instant matter, argued that the filing of the first action satisfied the survival statute's wind-up period for the second action.

The New Hampshire Supreme Court gave several reasons for rejecting plaintiff's argument. First, the court noted that corporate continuance statutes such as the one at issue expand common law rights and remedies and, therefore, should be strictly construed. Second, even though the state and federal court actions were virtually identical, they were not the same suit or action. Finally, the court held that "[t]o allow lawsuits to commence in contravention of a clearly expressed legislative policy would thwart the orderly process of corporate dissolution conceived by that policy. It would 'produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.'" *Id.* at 638 (quoting *Bishop v. Schield Bantam Co.*, 293 F.Supp. 94, 96 (N.D. Iowa 1968)).

In *Syrian Arabian Oil Co. v. Syrian Arab Republic*, 791 F.2d 602 (7th Cir.1986), the Seventh Circuit addressed a similar argument by a dissolved corporate plaintiff. In that case, which was governed by Delaware's three-year corporate wind-up statute, plaintiff Syrian Arabian Oil Company ("the Company") filed suit more than twenty years after its dissolution. The Company argued that its suit was timely because a similar suit was filed in Syrian court within three years of plaintiffs's dissolution. The Seventh Circuit found two flaws in plaintiff's argument. First, the Company was not the plaintiff in the Syrian suit. Instead, the plaintiff in that suit was Menhall Prospecting, a company in which Syrian Arabian Oil Company was a partner.

Second, even assuming that the Company and Menhall were identical, the court held that the filing of the first suit did not extend the time for filing the second suit.

[E]ven if the Company was able to show an identity between itself and Menhall, the Syrian suit would have no effect on this litigation. Section 278 continues a corporation's life beyond the three year period only for the limited purpose of completing actions which were already begun within three years of dissolution. Thus, assuming *arguendo* an identity between Menhall and the Company, under the plain wording of the statute, the Company would have been empowered to act beyond April 1964 only with respect to the Syrian suit. It could not file a distinct suit in another jurisdiction—even if the two suits were allegedly brought to enforce the same cause of action.

*Id.* at 604.

Finally, in *Smith–Johnson Steamship Corp. v. United States*, 231 F.Supp. 184 (D.Del.1964), an admiralty action, the court addressed a different but analogous fact situation. In that case plaintiff filed suit against the United States within three years of its dissolution. The United States filed an affirmative cross-libel, or counterclaim, in that same action more than three years after plaintiff's dissolution. The defendant argued that its cross-libel was not barred by the corporate wind-up statute because the action was begun within three years of plaintiff's dissolution. The court, however, rejected defendant's argument and held that the cross-libel was an independent action which was barred because it was not brought within three years of plaintiff's dissolution.

The Court finds the reasoning in the cases cited above to be persuasive. As the New Hampshire court noted in *MBC*, the purpose of corporate survival statutes is to "insure that there is 'a definite point in time at which the existence of a corporation and the transaction of its business are terminated.'" *MBC*, 397 A.2d at 638 (quoting *Bishop v.*

*Schield Bantam Co.*, 293 F.Supp. at 96). To interpret the statute as plaintiff does would permit a corporation to continue to file suits indefinitely beyond its dissolution simply by filing one suit against any defendant arising from the same transaction. Moreover, if the tables were turned, a dissolved corporation would be subject to suit indefinitely with respect to a particular transaction if any suit arising from that transaction were filed within the wind-up period. Such an interpretation undermines the certainty that the corporate survival statute was intended to promote.[4]

Plaintiff Nix argues that even if summary judgment is appropriate as to the corporate defendants, it is not proper as to him as the trustee for the shareholder trust. Nix argues that the shareholders' claims are not barred because the corporation made a general assignment of claims to the shareholder trust prior to its dissolution. Plaintiff bases his argument on dicta found in *Hutson v. Fulgham Industries, Inc.*, 869 F.2d 1457 (11th Cir.1989), wherein the Eleventh Circuit stated that unasserted contract claims "must be asserted within the wind-up period **(or be properly assigned)** to survive dissolution." *Hutson*, 869 F.2d at 1463 (emphasis added) (footnote omitted). While the highlighted parenthetical standing alone might appear to support plaintiff's argument, close examination of *Hutson* and other cases and of the policy behind corporate survival statutes contradicts such a conclusion.

▪ First, it is important to understand the history and purpose behind corporate survival statutes. Alabama's statute, Ala. Code § 10–2A–203 (1987), which is modeled after the Model Business Corporation Act, requires that all claims by or against a dissolved corporation, its officers, directors or shareholders be instituted within two years of the corporation's dissolution. Any claim not brought within that time period is extin-

guished. *Hutson*, at 1460 (11th Cir.1989). As discussed above, the purpose of such statutes is to insure that there is a definite point when the claims of a dissolved corporation cease. *MBC*, 397 A.2d at 638. Moreover, corporate survival statutes are in derogation of common law and are, therefore, strictly construed. *Id.*

▪ In a small number of cases, courts have held corporate survival statutes inapplicable to suits filed by shareholders of a dissolved corporation even though those actions were based on injuries to the corporation. In each of those instances, however, the court's reasoning was based on the equitable principle that a corporation's assets devolve to its shareholders, and the shareholder in each case could identify "a tangible property asset" which had devolved by operation of law or which had been assigned to the shareholder. *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F.Supp. 549, 551 (D.S.D.1989). This exception is consistent with the purpose of the corporate survival statutes because "the other party is not prejudiced by allowing a cause of action relating to collection of a tangible asset since the assignee of that property has a fixed and identifiable right separate from the corporations' original right." *Id.* at 551–52.

For example, in *Jenot v. White Mountain Acceptance Corp.*, 124 N.H. 701, 474 A.2d 1382 (1984) and *Shute v. Chambers*, 142 Ill. App.3d 948, 97 Ill.Dec. 92, 492 N.E.2d 528 (Ill.App.Ct.1986), former shareholders sued corporate debtors whose debts were evidenced by a note or mortgage and were of a fixed or ascertainable amount. In contrast, the amount, or even the existence, of any debt between the defendants in the instant case and Bel Air Corporation is disputed. In *Carmichael v. Halstead Nursing Center, Ltd.*, 237 Kan. 495, 701 P.2d 934 (1985) and *Levy v. Liebling*, 238 F.2d 505 (7th Cir.1956), *cert. denied*, 353 U.S. 936, 77 S.Ct. 812, 1

---

4. Numerous courts have rejected equitable tolling arguments in the analogous statute of limitations context where plaintiffs have contended that the filing of a suit in state court tolled the statute of limitations with respect to a later-filed federal court action. *See, e.g., Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir.1987) ("Prior judicial actions ... 'do not toll

the statute of limitations, no matter how close their relationship to the one at bar.' "); *Price v. United States*, 466 F.Supp. 315, 318 (E.D.Pa. 1979) ("[i]t is well settled that the commencement of an action in state court has no effect on the running of the statute with respect to an action filed later in federal court").

L.Ed.2d 759 (1957), the corporation's claims against the defendant had been reduced to judgment before dissolution and were therefore considered to be corporate assets. In this case, there is obviously no judgment since plaintiff's claims against these defendants have never been litigated.

It is this limited exception that was the focus of the *Hutson* opinion. Like Nix, the plaintiff in *Hutson* claimed that the breach of contract and tort claims he asserted were assets of the dissolved corporation and became his either by operation of law or by assignment. The issue in *Hutson* was "whether Foresco [the dissolved corporation] possessed any corporate assets to which Hutson, as a former Foresco shareholder, became legally entitled upon Foresco's dissolution." *Hutson*, 869 F.2d at 1461. The appellate court addressed Hutson's fraud and breach of contract claims separately.

In discussing the contract claim, the court, citing *Jenot*, recognized that the corporate survival statutes "were not intended 'to supplant the equitable rule that former shareholders succeed to the assets of a dissolved corporation," but held that it was "unwilling, however, to extend the equitable rule so far as to recognize a 'property interest' in an unasserted corporate contract claim which involves evidentiary problems and factual disputes." *Id.* at 1462–63. The Court then went on to state that such contract claims "must be asserted within the wind-up period **(or be properly assigned)** to survive dissolution."

Based on the latter statement, Nix asserts that a mere general assignment of all corporate claims will defeat the survival statute. Moreover, Nix argues that since defendants have not challenged the validity of the general assignment, the assignment must have been proper. Plaintiff ignores the appellate court's holding that an unasserted breach of contract claim is not a property interest or asset. *See also Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183 (7th Cir.1980) (distinguishing between an unasserted claim and a claim reduced the judgment prior to dissolution, the latter being extinguished after the wind-up period ends). A corporation cannot assign a proper-

ty interest that does not exist. Consequently, the validity of the Bel Air Corporation's general assignment is inconsequential.

That the *Hutson* court did not intend plaintiff's interpretation of the assignment language is evidenced in the court's discussion of how an assignment might have saved Hutson's contract claim.

> Had Foresco or its officers or shareholders initiated the contract claim during the statutory two-year period and then assigned it to Hutson, he could now claim that he is entitled to pursue the claim to judgment.

*Id.* at 1463, n. 16. Thus, the appellate court expected that a claim must, at a minimum, have been asserted prior to dissolution in order for an assignment to preserve the claim past the wind-up period.

While *Hutson* at least gives plaintiff an argument that his contract claims are tangible assets which became his by assignment, that case completely negates any similar argument with respect to plaintiff's tort claims. Addressing Hutson's fraud claim, the appellate court held that such claims

> "fall[ ] into a category that the survival statute clearly intended to prohibit after the wind-up period. This unasserted corporate claim should have been brought during the two year wind-up period because, as one court has noted '[t]he expired right is no more enforceable in the former shareholders' possession than it is in the defunct corporation's"

*Id.* at 1464 (quoting *MBC, Inc. v. Engel*, 119 N.H. 8, 397 A.2d 636, 639 (1979)).

■ A general assignment of claims by a corporation to its shareholders prior to the corporation's dissolution does not preserve unasserted claims past the statutory wind-up period. To hold otherwise would be completely contrary to the purpose of corporate survival statutes. As the *Davis* court stated:

> Allowing assertion of unexecuted or nascent claims past the time set by survival statutes would produce a 'continuous dribble of business actions contrary to the intent of the winding up provisions.' Allowing pursuit of corporate claims which are merely embryonic beyond the winding up period would expand the corporate sur-

vival statute beyond its terms and would interfere with its purpose of requiring the prompt and orderly winding up and finalization of corporate affairs.

*Davis,* 727 F.Supp. at 553 (quoting *MBC,* 397 A.2d at 639).

In sum, both of plaintiffs' arguments in opposition to summary judgment are contrary to the express language of the corporate survival statute and to the purpose of the statute. Consequently, the Court finds that all defendants are entitled to judgment as a matter of law. It is, therefore, **ORDERED** that the motions for summary judgment filed by defendants United States Gypsum Company and W.R. Grace Co.—Conn. be and hereby are **GRANTED.** Consistent with the Court's ruling in *Nix* II, judgment will be entered by separate order in favor of all defendants.[5]

### JUDGMENT

Pursuant to the Findings of Fact and Conclusions of Law of even date herewith, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that judgment be entered in favor of Defendants W.R. Grace & Co.—Conn. (previously known as W.R. Grace & Co.); United States Gypsum Company, and National Gypsum Company.

---

**5.** In *Nix* II, the Court ordered the plaintiffs to show cause why its order should not be applied to all defendants, even though only one defendant moved for summary judgment based on the corporate survival statute. Plaintiffs' only response was a motion to reconsider on behalf of Nix in which Nix argued that the statute was not applicable to the shareholders. The Court has applied its ruling in *Nix* II to all defendants and will do the same in this action.