**REL:06/27/2014**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2013-2014

_____

## 1110423

_____

**Martin K. Berks; Environmental Attorneys Group, LLC, and Environmental Attorneys Group, P.C.**

**v.**

**Gregory A. Cade et al.**

**Appeal from Jefferson Circuit Court
(CV-08-903634)**

On Application for Rehearing

PER CURIAM.

APPLICATION OVERRULED. NO OPINION.

Stuart, Bolin, Parker, Murdock, Main, Wise, and Bryan, JJ., concur.

Shaw, J., concurs specially.

Moore, C.J., dissents.

SHAW, Justice (concurring specially).

I concur in overruling the application for rehearing.

The present appeal arises from the most recent case in a series of actions stemming from the dissolution of Environmental Attorneys Group, LLC, a law firm ("EAG, LLC"), and the competing claims of the various parties, who are former partners in and/or employees of EAG, LLC, to certain fees. The defendants/counterclaim plaintiffs below -- Martin K. Berks, EAG, LLC, and Environmental Attorneys Group, P.C. ("EAG, P.C.") -- appeal from the trial court's order dismissing, with prejudice, their counterclaim and third-party complaint.

On original submission, this Court affirmed the trial court's judgment, without an opinion. Berks v. Cade, [No. 1110423, October 18, 2013] ___ So. 3d ___ (Ala. 2013). On rehearing, the appellants object to both this Court's affirmance and its decision not to issue an opinion. I write specially to explain why I concur with both decisions.

### Facts and Procedural History

In 1989, J. William Lewis formed Environmental Litigation Group, P.C. ("ELG, P.C."), a law firm specializing in toxic-

2

tort representation.[1] Berks and Mark Rowe were both subsequently employed by ELG, P.C., as attorneys, and Cade was employed, beginning in 1993, as a paralegal/investigator.

In 2001, Berks and Rowe formed EAG, LLC. Pursuant to the articles of incorporation, Berks and Rowe were the sole members of EAG, LLC, and each retained a 50% ownership interest. At some point thereafter, Cade was hired by EAG, LLC, as a paralegal. Cade subsequently obtained his juris doctorate and passed the Alabama bar examination and was employed by EAG, LLC, as an associate attorney.

In 2004, Cade planned to separate from EAG, LLC, and EAG, LLC,[2] sued Cade in the Jefferson Circuit Court (CV-04-0752) seeking injunctive relief against Cade, who, it alleged, was attempting to "steal cases from EAG, [LLC,] ... by signing [engagement] contracts in his own name instead of the EAG[,

_____

[1]ELG, P.C., at the time of its formation, was incorporated under the name "J. William Lewis Professional Corporation." Thereafter, it underwent several name changes, including "Asbestos Litigation Group, P.C." in 1990 and finally ELG, P.C., in 1991.

[2]Although the action was purportedly initiated on behalf of EAG, LLC, Rowe's affidavit testimony reflects that Berks solely undertook that litigation and that "[Rowe] did not approve or grant authority for Berks to file a complaint on behalf of [EAG, LLC,] or to enter into a mediation agreement between [EAG, LLC,] and Cade."

1110423

LLC,] name." Following court-ordered mediation, the parties ultimately resolved their dispute. The terms of the negotiated settlement agreement provided, in pertinent part:

"[Cade] shall be entitled to 50% of the fees from the creosote related personal injuries and property damage claims in the cases from Hattiesburg, MS, and Florala, AL. [EAG, LLC,] shall be entitled to 50% of such fees as well as fees from all other claims from such cases, with each principal of [EAG, LLC,] entitled to half. Wilbur Colom's law firm shall be associated in the Florala creosote cases on the same basis as the Hattiesburg cases. [Cade] shall request Colom's firm to disburse any monies due to be disbursed or paid to [EAG, LLC,] or [Cade] in accordance with this agreement.

"[Cade] shall take and be responsible for handling to a conclusion the Hattiesburg and Florala cases and the following cases (to the exclusion of all other cases or matters coming out of [EAG, LLC's] data bases):

"1. Michael Walker

"2. Wells vs. Georgia Pacific

"3. Kelly vs. Georgia Pacific

"4. Abraham Gandy

"5. Bubbet[t]

"6. Garrison

"7. Orbie Cantrell

"8. Earl Ridley

4

"[Cade] shall reimburse [EAG, LLC,] for all out of pocket expenses incurred in the above named cases one through eight within 30 days. [Cade] shall be entitled to all fees from cases one through eight except cases 4 and 5. [Cade] shall pay an amount equal to one-third of the net fees collected from cases 4 and 5 to [EAG, LLC,] when, as and if collected. [EAG, LLC,] shall continue to handle all cases and matters for clients identified in [EAG, LLC's] records or data bases except the Florala, and Hattiesburg cases and cases one through eight above.

"[EAG, LLC,] agrees to cause the above styled lawsuit to be dismissed with prejudice and to have the court either strike the pleadings and other papers filed from the record or to have the case sealed.

"[Cade] shall be given possession of the files for the Hattiesburg and Florala cases as well as cases one through eight above. [Cade] shall cause a copy of the contracts for the Hattiesburg cases to be delivered to [EAG, LLC,] within 30 days. [EAG, LLC,] and [Cade] shall provide each to the other a copy of any contract in the Hattiesburg and Florala cases received on or after the date of this agreement within a week after receipt. [Cade] shall provide [EAG, LLC,] with an updated client list for the Hattiesburg and Florala cases once each month."

The case was thereafter dismissed with prejudice and the record sealed.

Also in 2004, Berks communicated to the existing clients of EAG, LLC, his intention to leave EAG, LLC, and to form EAG, P.C., a new law firm formed solely by Berks. In conjunction with that plan, Berks requested that clients of EAG, LLC, sign

new engagement contracts with EAG, P.C. Ultimately, Rowe separately formed The Rowe Law Firm, LLC, on April 2, 2004; Cade formed The Cade Law Firm, LLC, on that same date; and Berks formed EAG, P.C., on April 5, 2004. EAG, LLC, effectively ceased operation in February 2004, but the firm was not then dissolved.[3]

On March 1, 2005, Cade replaced Lewis as a shareholder, director, officer, and employee of ELG, P.C.[4] When Cade joined ELG, P.C., it and Cade jointly continued to represent Cade's existing clients, including those referenced in the 2004 settlement agreement.

In February 2006, Rowe sued Berks and Berks's law firm, EAG, P.C., in the Jefferson Circuit Court (CV-06-749). Rowe's claims were resolved via mediation in July 2006, and that action was subsequently dismissed. As part of their mediated

---

[3]Although Berks had communicated to Cade and to Rowe in February 2004 his intention to dissolve EAG, LLC, at that time, the record reflects that he later decided not to dissolve the LLC because "[he] figured it would be less complicated ... once they collected money on Florala and Hattiesburg...."

[4]Cade's deposition testimony reflects that he is now the sole remaining principal of ELG, P.C. Cade also indicated that, at the time of his deposition in the underlying matter, the Cade Law Firm continues to exist as an undissolved limited-liability company.

1110423

settlement, Rowe and Berks agreed "to the dissolution of EAG, LLC pursuant to the applicable provisions of the Operating Agreement."[5]

_____

[5]With regard to dissolution, the EAG, LLC, operating agreement provides, in full, as follows:

"Article 10 -- DISSOLUTION AND LIQUIDATION OF THE COMPANY

"10.1 Dissolution. The Company shall be dissolved upon the earliest to occur of the following:

"(a) The written consent of Members holding one or more Voting Interests which taken together equal or exceed two-thirds (2/3) of all Voting Interests to dissolve the Company.

"(b) When there is no remaining Member, unless either of the following applies:

"(i) the holders of all the Economic Rights in the Company agree in writing, within ninety (90) days after cessation of membership of the last Member, to continue the legal existence and business of the Company and to appoint one or more new members; or

"(ii) the legal existence and business of the Company is continued and one or more new members are appointed in the manner stated in the Articles of Organization or this Agreement.

7

"(c) The merger of the Company with one or more other entities and the Company is not the successor limited liability company in such merger, or the consolidation of the Company with one or more other entities.

"(d) The entry of a decree of judicial dissolution by the circuit court of the county in which the Articles of Organization were filed.

"10.2 Winding Up Upon Dissolution. After the dissolution of the Company, the Members (or such other Persons as the Act [the Alabama Limited Liability Company Act, Ala. Code 1975, § 10-12-1 et seq., repealed by Act No. 2009-513, Ala. Acts 2009, effective January 1, 2011] may require or permit) shall wind up the affairs of the Company and shall file Articles of Dissolution with the office of the Judge of Probate of the county where the Articles of Organization were filed, and take such other actions as may be necessary or appropriate to terminate the Company.  The Members or other Persons winding up the Company's business may: (a) preserve the Company's business or property as a going concern for a reasonable time; (b) prosecute and defend actions and proceedings, whether civil, criminal or administrative; (c) settle and close the Company's business; (d) dispose of and transfer property; (e) discharge the Company's liabilities; (f) distribute the assets of the Company; and (g) perform other necessary and appropriate acts.

"10.3 Distribution and Dissolution.  Upon the winding up of the Company, the Company's assets shall be distributed in the following order of priority:

"(a) To creditors, including Equity Owners who are creditors to the extent

8

Although Berks and EAG, P.C., subsequently sought to have the 2006 negotiated settlement set aside, the trial court denied that request and Berks's subsequent appeal was apparently dismissed without opinion. In August 2007, Rowe accepted employment with ELG, P.C. -- where Cade worked -- as an associate attorney.

In October 2008, one of the matters referenced in the 2004 settlement agreement, M.C. v Pactiv et al. (identified as the "Florala cases" in the 2004 settlement agreement set out above), settled. Upon learning of the settlement, counsel, purportedly acting on behalf of Berks and EAG, LLC, notified

---

permitted by law, in order of priority;

"(b) To present and former Equity Owners for interim distributions; and

"(c) To Equity Owners in accordance with the positive Capital Account balances of the Equity Owners, as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs.

"The Company may offset damages for breach of this Agreement by an Equity Owner whose interest is liquidated (either upon the withdrawal of the Member or the liquidation of the Company) against the amount otherwise distributable to such Equity Owner."

9

counsel of record in the Florala cases by letter that, purportedly pursuant to the settlement agreement, Berks and EAG, LLC,[6]

> "assert[ed] a lien against any and all fees and expenses to be paid from the settlement proceeds to Gregory Cade, Robert Palmer, Fred DeLeon, Mark Rowe, Lee Gresham, Hoyt Harp and [ELG, P.C.,], its agents and/or representatives, attorneys, and members."

At or around that same time, EAG, LLC, filed a "Motion to Enforce Settlement Agreement" in case no. CV-04-0752, which motion was originally granted but later vacated. Cade received the settlement proceeds from the Florala cases on or around November 14, 2008.

In November 2008, Cade and his employer, ELG, P.C. (hereinafter sometimes collectively referred to as "the plaintiffs"), sued Berks; EAG, LLC; and Berks's firm, EAG, P.C. (hereinafter sometimes collectively referred to as "the defendants"); and various fictitiously named defendants in the Jefferson Circuit Court. Specifically, the verified complaint included the following counts:

---

[6]The letter fails to include a designation indicating whether the purported representation included EAG, LLC, or EAG, P.C. I presume, however, given the subsequent procedural history, that the letter was meant to refer to the claim of EAG, LLC.

| Count I | Injunctive Relief |
|---|---|
| Count II | Breach of Contract |
| Count III | Tortious Interference |
| Count IV | Conspiracy to Tortiously Interfere with Contracts |
| Count V | Fraudulent Inducement Regarding Settlement Agreement |
| Count VI | Conversion of Attorney Fees (Gandy and Bubbett cases) |
| Count VII | Declaratory Judgment[7] |
| Count VIII | Accounting |

The defendants subsequently answered and counterclaimed, alleging that they had complied in all respects with the terms of the 2004 settlement agreement but that Cade had repeatedly

---

[7]In particular, the plaintiffs sought a judgment from the trial court declaring that, as a result of the alleged wrongful conduct of Berks and EAG, LLC, Cade and ELG, P.C., were not obligated to remit the fees otherwise due under the 2004 settlement agreement.

breached that agreement.[8]   Their counterclaim included the

following counts:

<blockquote>

Count I          Breach of Contract

Count II         Tortious    Interference with
                 Contract

Count III        Unjust Enrichment

</blockquote>

---

[8]More specifically, the counterclaim alleged that Cade's conduct in breach of the 2004 settlement agreement was as follows

> "(a) he has not reimbursed Defendants for all out of pocket expenses incurred in the cases he was being allowed to handle; (b) he has not paid to [EAG,] LLC an amount 'equal to one-third of the net fees collected' in the Gandy case; (c) he has not reimbursed any of the expenses in the Bubbett case nor did he take over primary responsibility for the Bubbett case (No. 5) or do any work on behalf of Mr. Bubbett subsequent to the Settlement Agreement; (d) he has not provided copies of any contracts in the Hattiesburg or Florala cases received on or after the date of the Settlement Agreement; (e) he has never provided an updated client list for the Hattiesburg or Florala cases, much less provided one each month; (f) he has concealed settlements in the Hattiesburg group of cases from Defendants; (g) he has not paid "50% of such fees as well as fees from all other claims" from the Hattiesburg cases to [EAG,] LLC (either directly or through the Colom firm) (h) he has not paid "50% of such fees as well as fees from all other claims" from the Florala cases to [EAG,] LLC (either directly or through the Colom firm) (i) he failed to direct Colom's firm to disburse any monies due to be disbursed or paid to [EAG,] LLC in accordance with the Settlement Agreement."

1110423

|           |                       |
|-----------|-----------------------|
| Count IV  | Accounting            |
| Count V[9] | Fraudulent Suppression |

Rowe subsequently moved, pursuant to Rule 24(a), Ala. R. Civ. P., to intervene in the underlying case. In support of his request, Rowe alleged both "[t]hat the entity known as [EAG, LLC], is still an active limited liability corporation and has not been closed" and that Rowe "ha[d] a property interest in any claims made for attorney fees on behalf of [EAG, LLC]."[10] Upon an emergency motion by the defendants, the trial court ordered that the plaintiffs pay the clerk of the trial court the $2,399,125 fee received by them in conjunction with the resolution of the Florala cases. That same order granted, per the parties' stipulation in open court, Rowe's motion to intervene and his alignment as a plaintiff. The trial court, however, subsequently granted the plaintiffs' "Motion to Reconsider" and rescinded the portion of the order requiring the plaintiffs to pay the designated amount to the clerk.

---

[9]Count V was added later by amendment.

[10]Rowe's intervention motion appears inconsistent in that it purports to express his individual property interest in any attorney-fee claim made by EAG, LLC, but requests that Rowe be allowed to intervene "on behalf of [EAG, LLC]."

13

In March 2009, Rowe demanded, pursuant to the terms of the 2006 mediated settlement agreement, that Berks take steps to formally dissolve EAG, LLC. Also in 2009, Berks and EAG, LLC, filed a third-party complaint against Lewis, the founder of ELG, P.C. -- the firm Cade worked for -- and against Robert L. Palmer, then a member and the president of ELG, P.C. That pleading alleged that Palmer and Lewis had "intentionally and maliciously interfered with Cade's performance of the terms of the [2004] Settlement Agreement...."

Lewis and Palmer later moved to dismiss the third-party complaint on, among others, the following grounds:

"11. EAG, LLC, is the only possible proper party to the third party complaint. However, EAG, LLC, ceased to operate or to have any employees in February 2004, leaving as its only activity that of winding down. Part of winding down was EAG, LLC's performance of the terms of the [2004] Settlement Agreement by which it was to turn over possession of the files and client contracts for specified cases to Cade so he could handle the cases to their conclusion. According to Rowe, Cade and Amy [Pyle] Berks, EAG, LLC, did not deliver possession of the files and client contracts to Cade. ... Berks testified at deposition that he had no evidence that EAG, LLC, delivered possession of the files to Cade. ...

"12. EAG, LLC, could have been a proper party to bring the third party complaint but it was not authorized to do so. Berks had no authority as a less-than-majority owner of EAG, LLC, to cause EAG,

14

LLC, to file the third party complaint. EAG, LLC's Operating Agreement states that all 'decisions concerning the business and affairs of the Company shall be made, unless otherwise provided by Section 6.2, by members holding a majority interest.' ... The Operating Agreement defines a majority interest as 'one or more Voting Interests which taken together exceed fifty percent (50%) of the aggregate of all Voting Interests.' ... Consequently, Rowe and Berks, neither having a majority interest, would have had to both vote to file the third party complaint as an act of EAG, LLC, for the decision to be valid.

"13. Rowe did not authorize EAG, LLC, to file the third party complaint. Berks admits that Rowe is [a] member of EAG, LLC, and the members did not vote to file the counterclaim. ...."

(Footnotes omitted.) Lewis and Palmer supported the foregoing claims with numerous evidentiary submissions.

ELG, P.C., moved for a summary judgment in its favor declaring that the 2004 settlement agreement was unenforceable as a result of the alleged breach of that agreement by EAG, LLC, specifically Berks, in failing to surrender files identified in the agreement and in keeping all fees received in the Gandy and Bubbett cases also identified in the agreement. In that same motion, ELG, P.C., argued that any counterclaim asserted by Berks, individually, was due to be dismissed based on his alleged lack of standing to pursue any such claim. More specifically, ELG, P.C., alleged that Berks

15

"is a member of EAG, LLC, and is not seeking to enforce his rights as a member or manager against or liability to EAG, LLC," and that Berks was not a party to the 2004 settlement agreement, on which the claims were based; thus, ELG, P.C., argued that "EAG, LLC, is the only possible proper party to the counterclaim." It further argued:

> "EAG, LLC, would have been a proper party to bring the counterclaim but it was not authorized to do so. EAG, LLC's Operating Agreement states that all 'decisions concerning the business and affairs of the Company shall be made, unless otherwise provided by Section 6.2, by members holding a majority interest.' The Operating Agreement defines a majority interest as 'one or more Voting Interests which taken together exceed fifty percent (50%) of the aggregate of all Voting Interests.' Consequently, Rowe and Berks, neither having a majority interest, would have had to both vote to have EAG, LLC, file the counterclaim for the filing to be valid, Berks alone had no authority to cause EAG, LLC, to file the counterclaims.

> "<u>Berks admitted that Rowe is [a] member of EAG, LLC, and the members did not vote to file the counterclaim</u>. The counterclaim is due to be dismissed because EAG, LLC's members did not properly authorize the filing on the limited liability company's behalf."

(Emphasis original.)

Rowe also subsequently moved to dismiss any claims purportedly made on behalf of EAG, LLC, and by Berks, individually, on virtually identical grounds. In addition to

16

Berks's purported lack of authority to act on behalf of EAG, LLC, and Berks's purported lack of any individual interest making him a "proper party," Rowe further alleged that, as the other 50% interest holder in EAG, LLC, Rowe had not agreed to hiring counsel or filing litigation on behalf of EAG, LLC. Rowe's motion was supported by, among other exhibits, his sworn statement to the foregoing effect and by a copy of the sealed 2006 settlement agreement reached in case no. CV-06-749, which purportedly reflected that at no time had Rowe ever surrendered his equity interest in EAG, LLC.

On February 24, 2010, Rowe filed formal articles of dissolution for EAG, LLC, with the Jefferson Probate Court. That document reflected that the dissolution had been authorized by the vote and written consent of all members on July 19, 2006. Immediately thereafter, Rowe filed a motion seeking, in the underlying action, to disqualify counsel of record for EAG, LLC, on the ground that their hiring violated the terms of the EAG, LLC, operating agreement in that the members of EAG, LLC, had not voted to pursue any action on its behalf and that, in the absence of such approval, Berks was not authorized to bind EAG, LLC. Rowe's motion included

17

numerous supporting exhibits. ELG, P.C., Palmer, and Lewis subsequently filed a motion joining Rowe's motion seeking to disqualify counsel for EAG, LLC. Cade, too, later joined Rowe's motion.

The plaintiffs subsequently filed their own motion seeking, in part, to dismiss the counterclaim and third-party complaint based on the trial court's alleged lack of subject-matter jurisdiction. Specifically, relying primarily on the assertions set out above, they contended that "[EAG, P.C.], and ... Berks ... do not have the capacity or authority to assert the claims they have made and that [the trial court], therefore, [did] not have subject matter jurisdiction over the claims."

In response to Rowe's motion to disqualify counsel, Berks alleged that Rowe's own "unclean hands," resulting from Rowe's alleged breach of fiduciary duty owed to EAG, LLC, prevented Rowe from participating in the underlying litigation and/or obtaining relief from the court. Berks also requested that the trial court vacate the order permitting Rowe's intervention and expunge the formal dissolution Rowe filed in the Jefferson Probate Court, which requests Rowe opposed.

18

Thereafter, the plaintiffs renewed their request to dismiss the counterclaim and third-party complaint based on the trial court's alleged lack of subject-matter jurisdiction based on Berks's lack of standing to file those pleadings. In response, the defendants renewed their prior request -- allegedly based upon fears stemming from the anticipated dissolution of ELG, P.C. -- that the trial court require the plaintiffs to escrow the $1,199,562.50 in disputed fees from the Florala cases. The plaintiffs opposed that motion, noting that the funds at issue had been disbursed in the ordinary course of the business of ELG, P.C., and that, as the trial court had previously determined, the claim at issue was not a claim to specific funds but a potential claim for damages. They further disputed the possibility that ELG, P.C., would be dissolved before the underlying claims were resolved. The trial court subsequently denied the motion to escrow the funds. It also entered, after a hearing, an order finding that neither Rowe nor Berks had voted for or authorized the hiring of counsel and holding that "[t]he Operating Agreement does not allow members to cease their membership by a voluntary act and specifies that membership terminates only

upon the occurrence of an event described in the Alabama Limited Liability Company Act."  As a result, the trial court made the following "Conclusions of Law":

"EAG, LLC's Operating Agreement states that the company is dissolved upon [t]he written consent of Members holding one or more Voting Interests which, taken together equal or exceed two-thirds (2/3) of all Voting Interests. ...  Berks and Rowe, the sole members of EAG, LLC, who together held one hundred percent (100%) of the Voting Interests, gave their written consent to dissolution on July 19, 2006, when they signed the Settlement Agreement.  The Alabama Limited Liability Company Act provides that a limited liability company is dissolved upon the occurrence of the first event specified in the company's articles of organization, its operating agreement or the Act to result in dissolution.  See Ala. Code [1975, §] 10-12-37....

"At the moment the written consent specified by the Operating Agreement was given by all of its members, EAG, LLC, was dissolved pursuant to Alabama Code [1975, §] 10-12-37, which states that '[a] limited liability company is dissolved ... upon the occurrence of the first of the following events: (1) Events specified in the articles of organization or the operating agreement....'  Once the dissolution occurs, the limited liability company is to immediately begin to wind up its business and may not carry on any business except that necessary and appropriate to wind up and liquidate its business and affairs. ... Ala. Code [1975, §] 10-12-40.... While winding up the business and affairs of a limited liability company may be a process, dissolution is not.

"After the dissolution occurs pursuant to Alabama Code [1975, §] 10-12-37, it is mandatory that the company file articles of dissolution with

the judge of probate for the county in which the company's articles of organization were filed. See Ala. Code [1975, §] 10-12-42.... The language of the statute makes it clear, however, that filing the articles of dissolution has nothing to do with causing or completing the dissolution. The dissolution has already occurred by the time the articles of dissolution are filed and the articles are filed to give third parties notice that dissolution has occurred. The commentary to Alabama Code [1975, §] 10-12-42, explains the purpose of filing the articles of dissolution as follows:

>    "'It provides for filing of the articles of dissolution upon the <u>commencement</u> of winding up. The filing is intended to serve as notice to third parties that the limited liability company is being wound up and as a means of limiting the liability of members for subsequent actions of the limited liability company other than actions necessary for the winding up.'

"Ala. Code [1975, §] 10-12-42 ... (Commentary) (emphasis added). The date of the limited liability company's dissolution also triggers a limitation on its ability to commence an action or proceeding against third parties and provides protection from claims against the company. The period of time within which a dissolved limited liability company is to wind up its business and affairs is two years from the date of dissolution. <u>See</u> <u>Nix v. W.R. Grace & Co. CONN.</u>, 830 F. Supp. 601, 602 (S.D. Ala. 1993); <u>Hutson v. Fulgham Industries, Inc.</u>, 869 F.2d 1457, 1460 (11th Cir. 1989); Ala. Code [1975, §§] 10-12-45, 10-4-381, 10-2B-14.06, 10-2B-14.07 (and the Commentary thereto), 10-12-39, 10-12-40, 10-12-43, and 10-12-44.

"The limitation on the amount of time a dissolved limited liability company has to wind up is based on a legislative policy that there must be

a definite point in time when claims by and against dissolved business entities must cease. Nix v. W.R. Grace & Co. CONN, 830 F. Supp. [601] at 604 [(S.D. Ala. 1993)]. Absent a survival statute, common law would cause a dissolved entity's ability to bring and defend claims to end immediately upon the dissolution date. Id. A claim not brought within the time period is extinguished. Id. Claims of the limited liability company assigned to a member by a general assignment are also extinguished if not brought within the wind-up period. Id. at 605. Members of a dissolved limited liability company do not succeed to any unassigned assets after the wind-up period except fixed corporate assets and real property... Hutson v. Fulgham [Indus., Inc.], 869 F.2d [1457] at 1464 [(11th Cir. 1989)].

"The decisions in Hutson and Nix were based on Alabama Code [1975, §] 10-2A-203, which provided that:

"'The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of dissolution.'

"Id. Although Alabama Code [1975, §] 10-2A-203, has been repealed, it was replaced by Alabama Code [1975, §§] 10-28-14.06 and 10-2B-14.07. The Commentary to Alabama Code [1975, §] 10-2B-14.07, states that ...[t]he provision of the former Alabama Act most nearly corresponding to section 10-2B-14.07 is section 10-2A-203, providing for the survival of remedies against a dissolved corporation for a period of two years. Section 10-2B-14.07 of this Act continues the two year time limitation of prior

22

law.  ...  Ala.  Code  [1975,  §]  10-2B-14.07  ...
(Commentary).

"Alabama Code [1975, §] 10-12-45(f), states that
a limited liability company formed to provide
professional services is subject to the provisions
of the Revised Alabama Professional Corporation Act
which subjects professional corporations to the
provisions of the Alabama Business Corporation Act
of which Alabama Code [1975, §§] 10-2B-14-06 and
10-12-14.07, are a part.  Further, Alabama Code
[1975, §§] 10-12-43 and 10-12-44, are virtually the
same, word-for-word, as Alabama Code [1975, §§]
10-2B-14.06 and 12-2B-14.07, which apply to limited
liability companies.

"The Court also has considered Alabama Code
[1975, §] 10-12-40, of the Limited Liability Company
Act, entitled Survival of Remedy After Dissolution,
which provides that a dissolved limited liability
company continues its existence but cannot engage in
any business other than that necessary to wind up
its business. Specifically, dissolution does not
terminate or suspend a proceeding pending by or
against the limited liability company on the
effective date of dissolution. Ala. Code [1975, §]
10-12-40(b)(2).... The implication is that
dissolution does terminate the dissolved limited
liability company's ability to initiate new,
non-pending proceedings. The law clearly
contemplates that a limited liability company must
complete the winding up of its business within, at
most, two years from the date on which the event
resulting in its dissolution occurred.

"There is no dispute that more than two-thirds
of the holders of Voting Interests in EAG, LLC,
entered into a written consent to dissolve on July
19, 2006. According to the company's operating
agreement and Alabama Code [1975, §] 10-12-37, such
a written consent resulted in the immediate
dissolution of EAG, LLC, and the beginning of the

23

winding-up period. Consequently, EAG, LLC, was barred from conducting any new business or asserting claims against others after July 19, 2008, two years following its dissolution date. The hiring of a lawyer and asserting claims against the plaintiffs and third-party defendants herein in the name of EAG, LLC, after July 19, 2008, was barred by the Alabama survival of remedy statutes and caselaw. The attorneys purporting to represent EAG, LLC, are due to be disqualified.

"The defendants have argued that Rowe ceased to practice law with EAG, LLC, in February or March 2004, that he breached his fiduciary duties by competing against EAG, LLC, with Cade, and that he, as a consequence, ceased to be a member of EAG, LLC, before he signed the Settlement Agreement on July 19, 2006, consenting to the dissolution of EAG, LLC. The evidence is otherwise.

"Any member of EAG, LLC, was permitted under the Operating Agreement to compete with EAG, LLC. Berks clearly engaged in competition with the company when he sent letters to EAG, LLC's clients soliciting them to sign up with [EAG, P.C.], in February 2004. The Operating Agreement also provides that a member cannot cease membership in EAG, LLC, by a voluntary act but only through the occurrence of events specified in the Alabama Limited Liability Company Act. Alabama Code [1975, §] 10-12-36, lists the events which will result in the cessation of a member's membership in a limited liability company. There is no evidence that any of the events which would cause Rowe to lose membership in EAG, LLC, occurred.

"... [I]ndeed, Berks made the same allegations against Rowe in ... CV-2006-0749, in a verified motion to set aside the July 19, 2006, Settlement Agreement with Rowe and the motion was denied. Berks's appeal of the court's decision to deny the motion was unsuccessful.

24

"Even were the defendants' argument correct that Rowe ceased to be a member prior to the execution of the Settlement Agreement, Berks would have been the sole owner of EAG, LLC, and would have been the holder of 100 percent of the Voting Interests when he signed the consent to dissolve EAG, LLC, on July 19, 2006.

"The effect would be the same: the immediate dissolution of EAG, LLC, on July 19, 2006, by the written consent to dissolution of those holding two-thirds or more of the Voting Interests. The bar of the survival of remedy statutes and caselaw would likewise be the same and EAG, LLC, would have no authority to hire a lawyer or to initiate claims after July 19, 2008.

"The defendants maintain that, even if EAG, LLC, has been dissolved, Berks takes EAG, LLC's assets either by assignment or as the sole owner upon dissolution, including any contract and tort claims the company had against Cade. The defendants' resulting position is that Berks is not barred from asserting the counterclaims and the claims in the third party complaint because he became the owner of the claims when EAG, LLC, dissolved. The law is otherwise. A general assignment of all corporate claims does not preserve them past the wind-up period and Berks does not succeed to such claims by virtue of having been a member of EAG, LLC, by operation of law or otherwise. Nix, 830 F. Supp. at 605. Even if the law provided for the assignment of such claims to former company members, there is no evidence of an assignment by EAG, LLC, of any of its property to anyone. In fact, Berks testified at deposition that he has no interest in the claims other than as [a] member of EAG, LLC.

"Berks and [EAG], P.C., are certainly entitled to employ legal counsel of their choosing to defend claims made against them and to pursue claims belonging to them. Neither Berks nor [EAG], P.C.,

has standing, however, to assert claims that belonged to EAG, LLC. The Court notes that the 2004 settlement agreement (at mediation) was between Cade and EAG, LLC. Berks and [EAG], P.C., were not parties to that agreement which is the basis for the claims asserted against the plaintiffs and the third party defendants in this action. It does not appear that Berks has any claims of his own to assert in this case.

"The defendants argued that Rowe and the plaintiffs admitted that EAG, LLC, ha[d] not been dissolved when the plaintiffs named EAG, LLC, as a party in the complaint and Rowe intervened based on assertions that he is entitled to half of any monies awarded to EAG, LLC, in this case. The Court notes that on the dates that the complaint and the motion to intervene were filed, there was no public record reflecting EAG, LLC's dissolution because the company's articles of dissolution were not filed until February 4, 2010, well after the complaint and motion were filed. Regardless of any individual's belief that EAG, LLC, ha[d] not been dissolved, an event required to dissolve it has occurred and it is dissolved as a matter of law. As a matter of law, EAG, LLC, was dissolved on July 19, 2006, when all of its members gave their written consent to the dissolution.

"Had EAG, LLC, not been dissolved, the outcome of the motion to disqualify would be the same. EAG, LLC's Operating Agreement provides that the business of the company is to be conducted in accordance with a vote by the holders of fifty-one percent (51%) of the Voting Interests in EAG, LLC. The evidence is that Rowe, a fifty percent (50%) Voting Interest holder, has not and will not vote in favor of having EAG, LLC, hire an attorney or to pursue the counterclaims and third party claims filed in this case. Based on its Operating Agreement and the evidence, EAG, LLC, has not been authorized to employ legal counsel or to proceed with its claims

26

in this case. The attorneys appearing of record for EAG, LLC, are due to be disqualified.

> "The Defendants' Motion to Vacate and Expunge is due to be granted as to vacating the order allowing Rowe's intervention. Rowe's purpose for his appearance was to assert an interest in the possible proceeds of claims asserted by EAG, LLC, and to prevent the company from incurring liability by attempting to collect on claims Rowe believes do not exist. This Court having found that EAG, LLC's winding-up period has expired, any claims it had having been extinguished and its having no legal existence, Rowe has no further interest in the outcome of the case. To the extent the defendants' motion seeks to expunge the public record of the articles of dissolution of EAG, LLC, filed by Rowe, it is due to be denied. EAG, LLC, was, in fact, dissolved and the filing of the articles of dissolution is mandatory."

(Footnotes omitted.) The trial court's order contained adjudications in keeping with the foregoing findings.

In response, the defendants filed a "Motion to Alter, Amend or Stay" the trial court's order, in which they requested, in light of plans to appeal, that the trial court either stay or delete the portion of the foregoing order directing counsel to withdraw within 10 days. The trial court granted that request.

Following the trial court's entry of the above order, the plaintiffs, Palmer, and Lewis renewed their summary-judgment request by means of a joint motion. Specifically, they relied

27

on the trial court's legal conclusions, as set out above, as further support for the defendants' alleged lack of standing and the trial court's resulting lack of subject-matter jurisdiction.

Thereafter, the defendants filed a "Motion to Reconsider and Vacate" alleging that the above holdings of the trial court were contrary to Alabama's Limited Liability Company Act in that § 10A-5-7.03(b), Ala. Code 1975, purportedly "does not require a vote of the members to take any action once the LLC begins winding up." They further alleged that, as the member tasked with winding up affairs of the EAG, LLC, Berks was entitled both to defend the underlying claims and to prosecute the related counterclaims and that the claims were not barred by former § 10-12-43, Ala. Code 1975, as a result of the exception created in former § 10-12-44, Ala. Code 1975, relating to claims unknown to a limited-liability company at the time of dissolution.[11] The defendants also filed their own motion seeking a partial summary judgment as to counts III, IV, and VI of the complaint filed by Cade and ELG, P.C. --

---

[11]The cited former Code sections, however, deal with claims against a dissolved limited-liability company, both known to the limited-liability company, see former § 10-12-43, and unknown, see former § 10-12-44.

28

which, they contended, were the only remaining viable claims -- and alleging that the only damages claimed by Cade and ELG, P.C., and established by the record were nonrecoverable attorney fees.

In response, Rowe again sought to intervene, individually, and to strike all pleadings filed by defendants' counsel after the entry of the trial court's disqualification order. The plaintiffs similarly filed a response in opposition and a request to strike the defendants' partial-summary-judgment motion.

The trial court denied the defendants' "Motion to Reconsider and Vacate" in light of the findings from its prior order, as set out above. By separate order, the trial court granted the renewed motion of the plaintiffs and of Lewis and Palmer for a summary judgment, also based on its prior findings and conclusions of law, namely that the defendants "have no standing to assert claims owned by [EAG, LLC], because [EAG, LLC,] never authorized them to assert the claims in accordance with [EAG, LLC's] operating agreement." The trial court, therefore, concluded that it lacked subject-matter jurisdiction over the counterclaim and third-party

29

claims, and, as a result, it dismissed those claims and the claims asserted by the plaintiffs against EAG, LLC, with prejudice. Thereafter, the plaintiffs requested that the trial court dismiss with prejudice counts III, IV, and VI of their complaint, which, they conceded, represented the only remaining counts, and enter a final judgment disposing of the underlying matter in its entirety. The trial court granted that motion; the defendants timely appealed.

## Standard of Review

"'On an appeal from a dismissal based on a lack of standing ..., we must view the allegations of the complaint in the light most favorable to the plaintiff, resolve all doubts in the plaintiff's favor, and uphold the ruling of the trial court only if we determine that the plaintiff cannot establish a right to judicial review under any set of facts provable under the allegations of the complaint. Richards v. Department of Revenue & Finance, 454 N.W.2d 573, 574 (Iowa 1990). No presumption of correctness exists as to the trial court's application of the law to the facts. Jayroe v. Hall, 624 So. 2d 522 (Ala. 1993). The issue of standing presents a pure question of law, and the trial court's ruling on that issue is entitled to no deference on appeal. Richards v. Cullen, 152 Wis. 2d 710, 712, 449 N.W.2d 318, 319 (Wis. App. 1989).'"

Packaging Acquisition Corp. v. Hicks, 893 So. 2d 299, 301-02 (Ala. 2004) (quoting Medical Ass'n of Alabama v. Shoemake, 656 So. 2d 863, 865 (Ala. Civ. App. 1995)). Accordingly, this

30

Court would review de novo the issue whether the trial court erred in granting the motion to dismiss based on its finding as to its lack of subject-matter jurisdiction. See Ex parte Morgan Asset Mgmt., Inc., 86 So. 3d 309, 313-14 (Ala. 2011).

## Discussion

The defendants identify numerous alleged errors on the part of the trial court. The actual argument portion of their brief, however, appears limited to the following: (1) a challenge to the trial court's findings as to the effective date of the dissolution and winding up of EAG, LLC; (2) a challenge to the trial court's determination that Berks possessed no individual standing to assert claims to the fees due EAG, LLC, under the 2004 settlement agreement; and (3) a challenge to the trial court's ruling allowing Rowe to intervene, including a challenge to the trial court's decision, as urged by Rowe, that EAG, LLC, could neither hire

1110423

counsel to defend itself nor assert counterclaims.[12] Defendants' brief, at pp. 39-40.

### 1. Dissolution of EAG, LLC

Initially, the defendants challenge the trial court's determination that EAG, LLC, was dissolved on July 19, 2006, pursuant to the terms of the settlement agreement reached by Berks and Rowe in case no. CV-06-749. Contrary to that finding, the defendants maintain that, purportedly in accordance with statutory provisions governing the dissolution of a limited-liability company, dissolution does not occur until all members agree, the limited-liability company's affairs are wound up, and articles of dissolution have been filed in the appropriate county. Thus, according to the defendants, the July 2006 agreement between Berks and Rowe to dissolve EAG, LLC, was, as provided for in § 10A-5-7.01(2), Ala. Code 1975, merely the initial step in dissolving EAG, LLC, and the actual dissolution was not effected until the

---

[12]To the extent any of the 14 issues identified by the defendants in the "Statement of the Issues" portion of their brief are not actually covered by the argument portion of their brief, those claims would be deemed waived. See, e.g., Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So. 2d 317, 319 (Ala. 2003) (stating that issues not raised and argued in brief are waived).

subsequent steps of winding up, governed by § 10A-5-7.03, Ala. Code 1975, and the filing of formal articles of dissolution, see § 10A-5-7.06, Ala. Code 1975, were completed.

In support of this claim, the defendants note both that § 10A-5-7.04, Ala. Code 1975, provides that "[a] dissolved limited liability company continues its existence but may not carry on any business except that necessary or appropriate to wind up and liquidate its business and affairs," and that, pursuant to § 10A-5-7.03, the person charged with winding up the limited-liability company may "[p]reserve the company business or property as a going concern for a reasonable time; prosecute and defend actions and proceedings, whether civil, criminal, or administrative; [and] settle and close the limited liability company's business." In light of the plain language of § 10A-5-7.04, as set out above, the defendants also argue that Berks had "a reasonable time" in which to wind up the affairs of EAG, LLC, including collecting the disputed fees, and was not, as the trial court concluded, subject to the fixed two-year winding-up period imposed on corporations by former § 10-2A-203, Ala. Code 1975. The defendants further point to the fact that, here, the subject cases did not settle

and the disputed fees were not received and, thus, Cade's alleged breach of the 2004 settlement agreement did not occur until more than two years had elapsed from the July 2006 settlement agreement between Berks and Rowe.

### A. Dissolution

Despite their purported reliance on the "plain text" of the applicable statutes governing the dissolution of limited-liability companies, the defendants appear, in my opinion, to wholly ignore the effects of those statutes. Initially, as do the plaintiffs, I note that § 10A-5-7.01, Ala. Code 1975, provides, in pertinent part:

> "A limited liability company is dissolved and its affairs shall be wound up upon occurrence of the first of the following events:
>
>> "(1) Events specified in the governing documents.
>
>> "(2) Written consent of all members to dissolve.
>
>> "...."

(Emphasis added.)

Here, the governing document, namely the operating agreement of EAG, LLC, specifically provides that "[EAG, LLC,] shall be dissolved upon ... [t]he written consent of Members

34

holding one or more Voting Interests which taken together equal or exceed two-thirds (2/3) of all Voting Interests to dissolve the Company." See note 5, supra. It is undisputed that, pursuant to the terms of the July 2006 settlement concluding case no. CV-06-749, Berks and Rowe agreed "to the dissolution of EAG, LLC." Therefore, as the trial court concluded, dissolution clearly occurred when, as provided for in the operating agreement and as specified in 10A-5-7.01, Berks and Rowe agreed in writing to dissolve EAG, LLC. In fact, that written agreement satisfies both of the foregoing prerequisites in § 10A-5-7.01.

I see nothing to suggest, as the defendants allege on appeal, that the trial court concluded that, pursuant to its dissolution in July 2006, EAG, LLC, "automatically ceased to exist." Defendants' brief, at p. 40. Instead, the trial court's order, as set out above, plainly indicates, as also described in § 10A-5-7.01, that, following the occurrence of the specified "[e]vents of dissolution[,] a limited liability company is dissolved and its affairs shall be wound up."

The defendants appear to argue that, because the filing of articles of dissolution pursuant to § 10-5-7.06, Ala. Code

1975, is mandatory, dissolution is not effected until that filing occurs. The plain language of § 10A-5-7.06, however, specifically provides that the articles of dissolution are to be filed with the appropriate probate court "[a]fter the dissolution of the limited liability company pursuant to § 10A-5-7.01 ...." (Emphasis added.) Therefore, the statute itself makes clear that the formal filing is not a part of the actual dissolution process but, rather, a mere follow-up formality to place the public on notice that the dissolution has occurred.[13] The defendants cite no authority suggesting

---

[13]In at least two separate places in their brief to this Court, the defendants appear to contend briefly that the articles of dissolution filed by Rowe failed to meet the statutory requirements of § 10A-5-7.06. Defendants' brief, at pp. 44 n.15, 46. More specifically, the defendants indicate that "[t]here was no evidence of compliance offered by Rowe" and that the articles were, therefore, due to be expunged. Defendants' brief, at p. 44 n.15. To the extent that the defendants intended this to be a separate claim, I note that they have included no real explanation or any supporting authority demonstrating how the articles of dissolution were deficient. Accordingly, because they failed to comply with the requirements of Rule 28(a)(10), Ala. R. App. P., they have waived this potential claim for purposes of appellate review. See City of Birmingham v. Business Realty Inv. Co., 722 So. 2d 747, 752 (Ala. 1998) ("When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research.").

otherwise. The trial court, therefore, did not err in concluding that the dissolution of EAG, LLC, occurred in July 2006 -- when Rowe and Berks agreed to dissolution pursuant to the terms of the mediated settlement agreement reached in case no. CV-06-749.

B. Winding up

The defendants next contend that during the process of winding up a limited-liability company, the limited-liability company, as specified in § 10A-5-7.03, Ala. Code 1975, continues its existence "for a reasonable time," during which it may not engage in any new business, but the person charged with winding up the limited-liability company may, among other acts, "prosecute and defend actions and proceedings." See also § 10A-5-7.04(a), Ala. Code 1975 ("A dissolved limited liability company continues its existence but may not carry on any business except that necessary or appropriate to wind up and liquidate its business and affairs."). Thus, in light of the plain language of § 10A-5-7.03, the defendants contend that the trial court erred in fixing the winding-up period at the automatic, two-year cut-off period applied to corporations under former § 10-2A-203, Ala. Code 1975. In further support

of this allegation of error, the defendants note that the disputed fees were not paid and thus not subject to collection until over two years after the 2006 dissolution date.

The plaintiffs appear to concede that EAG, LLC, continued "to exist ... for the limited purpose of carrying out only that business necessary to wind up and liquidate." Plaintiffs' brief, at p. 18. They counter, however, that that process was to be undertaken by the members who, at all times, remained bound by the terms of the operating agreement. See Harbison v. Strickland, 900 So. 2d 385, 391 (Ala. 2004). More specifically, they argue that no vote occurred during the winding-up period authorizing either member or EAG, LLC, to prosecute the subject claims.

Although I agree that the trial court's application of a two-year winding-up period appears to conflict with the "reasonable time" language found in § 10A-5-7.03, the defendants, nonetheless, have failed to convince me that the trial court's decision in this regard constitutes reversible error.[14] First, I note that, other than a citation to the

---

[14]The plaintiffs contend on appeal, as the trial court also apparently concluded, "that a limited liability company formed to provide professional services is subject to the Revised Alabama Professional Corporation Act and is,

38

general statutory authority set out above, the defendants fail to identify any supporting authorities applying those sections to factual scenarios similar to the one before us or establishing what is a "reasonable time" for winding up as contemplated by the Code.  Notably, the defendants similarly fail either to discuss or to attempt to distinguish the authorities cited in the trial court's order as support for the challenged finding.  I, therefore, question whether the defendants' argument in this regard comports with the requirements of Rule 28, Ala. R. App. P.

This Court has repeatedly cautioned that

"'Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant's brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on."  Further, "it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments." State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806, 822 (Ala. 2005) (citing Ex parte Showers, 812 So. 2d 277, 281 (Ala. 2001)). This is so, because "'it is not the function of this

---

therefore, subject to the Alabama Business Corporation Act" and the two-year limitations period on winding up corporate affairs upon dissolution.  Plaintiffs' brief, at p. 31.  As discussed in more detail below, however, an analysis of this particular argument would not be necessary, because the trial court's findings are due to be affirmed on other grounds.

Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.'" Butler v. Town of Argo, 871 So. 2d 1, 20 (Ala. 2003)(quoting Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994))."

Prattville Mem'l Chapel v. Parker, 10 So. 3d 546, 560 (Ala. 2008) (quoting Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So. 2d 1, 9 (Ala. 2007)). Here, as noted above, the defendants have failed to include any citation to authority in support of the argument presented. "It is the appellant's burden to refer this Court to legal authority that supports its argument." Madaloni v. City of Mobile, 37 So. 3d 739, 749 (Ala. 2009). In the absence of such, the defendants have waived this claim on appeal.

In addition, I am unconvinced that it was unreasonable on the part of the trial court to infer that the statutory winding-up period for one type of corporate entity may serve as a presumptively reasonable winding-up period for another. Certainly, as noted above, the defendants have failed to identify any authority stating that it may not.

Finally, I see nothing to indicate, as Berks argues, that he was, in fact, charged by Rowe with sole responsibility for

winding up the business of EAG, LLC. Instead, the terms of the 2006 settlement agreement appear to indicate that Berks was charged only with taking steps to formally dissolve EAG, LLC, i.e., filing articles of dissolution.[15] I further note that, also pursuant to the terms of that agreement, Berks and Rowe agreed to proceed with dissolution pursuant to the applicable terms of the operating agreement. As to dissolution, the operating agreement plainly states that "[t]he Member_s_" are the appropriate party to pursue litigation on behalf of ELG, LLC. See note 5, supra. Thus, even if, as Berks argues, the underlying counterclaim was the direct result of his purported efforts at "winding up," there is nothing suggesting that, in that role, he was excused from the requirement of obtaining a majority vote in favor of his actions before proceeding on behalf of EAG, LLC. In light of the foregoing, I see no error in this regard.

## 2. Berks's Individual Standing

### A. Devolvement of Assets of EAG, LLC, to Members upon Dissolution

---

[15]In fact, it was Berks's failure to carry out this responsibility that led to the subsequent filing of articles of dissolution by Rowe.

1110423

The defendants next contend that, assuming that the trial court correctly ruled that EAG, LLC, was dissolved, the interest in the contested cases held by EAG, LLC, as set out in the 2004 settlement agreement, devolved to Berks pursuant to the distribution of the assets of EAG, LLC, as provided for in § 10A-5-7.05. Thus, Berks maintains, he possessed a sufficient interest to impart the requisite standing to assert the claims accruing to EAG, LLC, under the 2004 settlement agreement. I disagree.

The cited Code section merely provides the following "order of priority" for distributing the assets of a dissolving limited-liability company during the winding-up period:

"(1) To creditors, including members who are creditors to the extent allowed by Section 10A-5-3.01 or otherwise permitted by law, in order of priority as provided by law, except those liabilities to members of the limited liability company for interim distributions or on account of their contributions.

(2) Except as otherwise provided in the governing documents, to members of the limited liability company and former members for interim distributions and in respect of their contributions.

(3) Except as otherwise provided in the governing documents, to members first for the return of their contributions and second with respect to

42

their interests in the limited liability company, in the proportions in which the members share in distributions."

In support of his apparent contention that the foregoing supports his claim of individual standing to assert claims belonging to the former limited-liability company, Berks cites a single appellate decision from Washington state for the general proposition that title to limited-liability-company-owned assets and property devolve to the owners of the limited-liability company upon dissolution of the limited-liability company. See Sherron Assocs. Loan Fund V (Mars Hotel) LLC v. Saucier, 157 Wash. App. 357, 237 P.3d 338 (2010). Notably, however, the Saucier court's decision concerned the devolution of a perfected judgment held by a defunct limited-liability company and its finding that "[a] judgment is an intangible asset." 157 Wash. App. at 363, 237 P.3d at 363.

Berks, however, offers only his own unsupported argument -- failing to cite to this Court any binding authority -- indicating that the claim at issue, an inchoate contract right, is an "asset" of EAG, LLC, that would have devolved to

43

the members of EAG, LLC, upon its dissolution.[16]  In fact, Berks acknowledges that he was unable to find any Alabama law to support his claim.  I note, however, that both Hutson v. Fulgham Industries, Inc., 869 F.2d 1457 (11th Cir. 1989), and Nix v. W.R. Grace & Co.-Conn., 830 F. Supp. 601 (S.D. Ala. 1993), which were cited in the order of the trial court from which Berks appeals, appear to stand for the contrary proposition.

Specifically, in Nix, the federal district court discussed and applied the holding of the United States Court of Appeals for the Eleventh Circuit in Hutson as follows:

> "In a small number of cases, courts have held corporate survival statutes inapplicable to suits filed by shareholders of a dissolved corporation even though those actions were based on injuries to the corporation. In each of those instances, however, the court's reasoning was based on the equitable principle that a corporation's assets devolve to its shareholders, and the shareholder in each case could identify 'a tangible property asset' which had devolved by operation of law or which had

---

[16]Any contention by Berks that, as a result of Rowe's departure, Berks was the sole remaining member of EAG, LLC, and thus the only one entitled to assert claims purportedly accruing to EAG, LLC, appears meritless.  See Richard A. Thigpen, Alabama Corporation Law § 1:18 (4th ed. 2012) ("Under [the Code], the departure of one or more members does not work an automatic dissolution of a company even where the company is left with no remaining members." (footnote omitted)).

been assigned to the shareholder. <u>Davis v. St. Paul Fire & Marine Ins. Co.</u>, 727 F. Supp. 549, 551 (D.S.D. 1989). This exception is consistent with the purpose of the corporate survival statutes because 'the other party is not prejudiced by allowing a cause of action relating to collection of a tangible asset since the assignee of that property has a fixed and identifiable right separate from the corporations' original right.' <u>Id.</u> at 551–52.

"For example, in <u>Jenot v. White Mountain Acceptance Corp.</u>, 124 N.H. 701, 474 A.2d 1382 (1984) and <u>Shute v. Chambers</u>, 142 Ill. App. 3d 948, 97 Ill. Dec. 92, 492 N.E.2d 528 (Ill. App. Ct.1986), former shareholders sued corporate debtors whose debts were evidenced by a note or mortgage and were of a fixed or ascertainable amount. In contrast, the amount, or even the existence, of any debt between the defendants in the instant case and Bel Air Corporation is disputed. In <u>Carmichael v. Halstead Nursing Center, Ltd.</u>, 237 Kan. 495, 701 P.2d 934 (1985) and <u>Levy v. Liebling</u>, 238 F.2d 505 (7th Cir. 1956), <u>cert. denied</u>, 353 U.S. 936, 77 S.Ct. 812, 1 L. Ed. 2d 759 (1957), the corporation's claims against the defendant had been reduced to judgment before dissolution and were therefore considered to be corporate assets. In this case, there is obviously no judgment since plaintiff's claims against these defendants have never been litigated.

"It is this limited exception that was the focus of the <u>Hutson</u> opinion. Like Nix, the plaintiff in <u>Hutson</u> claimed that the breach of contract and tort claims he asserted were assets of the dissolved corporation and became his either by operation of law or by assignment. The issue in <u>Hutson</u> was 'whether Foresco [the dissolved corporation] possessed any corporate assets to which Hutson, as a former Foresco shareholder, became legally entitled upon Foresco's dissolution.' <u>Hutson</u>, 869 F.2d at 1461. The appellate court addressed

45

Hutson's fraud and breach of contract claims separately.

"In discussing the contract claim, the court, citing Jenot, recognized that the corporate survival statutes 'were not intended "to supplant the equitable rule that former shareholders succeed to the assets of a dissolved corporation,"['] but held that it was 'unwilling, however, to extend the equitable rule so far as to recognize a "property interest" in an unasserted corporate contract claim which involves evidentiary problems and factual disputes.' Id. at 1462-63. The Court then went on to state that such contract claims 'must be asserted within the wind-up period (or be properly assigned) to survive dissolution.'

"Based on the latter statement, Nix asserts that a mere general assignment of all corporate claims will defeat the survival statute. Moreover, Nix argues that since defendants have not challenged the validity of the general assignment, the assignment must have been proper. Plaintiff ignores the appellate court's holding that an unasserted breach of contract claim is not a property interest or asset. See also Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co., 629 F.2d 1183 (7th Cir. 1980) (distinguishing between an unasserted claim and a claim reduced [to] judgment prior to dissolution, the latter being extinguished after the wind-up period ends). A corporation cannot assign a property interest that does not exist. Consequently, the validity of the Bel Air Corporation's general assignment is inconsequential."

830 F. Supp. at 604-05.

The defendants thus fail to convince me that the claims of EAG, LLC, which were based upon the plaintiffs' disputed breach of the 2004 settlement agreement, were, in fact, the

46

type of asset contemplated by § 10A-5-7.05. See Hutson, 869 F.2d at 1463 n.15 (explaining the Court's holding as "declin[ing] to include unasserted corporate contract claims within the equitable [devolution] rule's operation"). In the absence of Berks's actual ownership of the claim of EAG, LLC, which Berks purported to assert below, I cannot fault the trial court for finding that Berks lacked the ability to pursue the claim.[17]

------

[17] "'This Court may affirm a trial court's judgment on "any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court."' General Motors Corp. v. Stokes Chevrolet, Inc., 885 So. 2d 119, 124 (Ala. 2003) (quoting Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003)); Vesta Fire Ins. Corp. v. Milam & Co. Constr., 901 So. 2d 84, 104 (Ala. 2004) ('Subject to limited exceptions, an appellate court will affirm a summary judgment on the basis of a law or legal principle not invoked by the moving party or the trial court, even though an appellate court will not reverse a summary judgment on the basis of a law or legal principle not first argued to the trial court by the nonmoving party.' (footnote omitted)). However, this Court has stated: 'This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of

B.  Berks's Individual Standing Pursuant to the 2004 Settlement Agreement

Alternatively, the defendants maintain that, even assuming, as the trial court concluded, that the rights of EAG, LLC, under the 2004 settlement agreement did not devolve to Berks upon its dissolution, Berks nonetheless possessed standing to assert claims under that agreement as an intended third-party beneficiary of the 2004 settlement agreement. Specifically, they point to the language of the 2004 settlement agreement providing that payment of the disputed fees was to be made to EAG, LLC, with "each principal of [EAG, LLC,] entitled to half."  Thus, the defendants contend, Berks is an identified third-party beneficiary of that agreement,

---

the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment, or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element.' [Liberty Nat'l Life Ins. Co. v.] University of Alabama Health Servs. [Found., P.C.], 881 So. 2d [1013] at 1020 [(Ala. 2003)] (citations omitted)."

Warren v. Hooper, 984 So. 2d 1118, 1121 (Ala. 2007).

48

who is entitled to assert a claim that the 2004 settlement agreement has been breached.

Pursuant to the authorities cited by the defendants:

"To recover under a third-party-beneficiary theory, [Berks] must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the claimant was the intended beneficiary of the contract; and (3) that the contract was breached."

Ex parte Steadman, 812 So. 2d 290, 295 n.3 (Ala. 2001). Further, "[a] third person has no rights under a contract between others," and no standing to sue based on a breach of that contract, "unless the contracting parties intend that the third person receive a direct benefit enforceable in court." Russell v. Birmingham Oxygen Serv., Inc., 408 So. 2d 90, 93 (Ala. 1981) (citations omitted).

In Russell, where a nonparty to a noncompete agreement attempted to enforce that agreement based upon his ownership of the contracting company, this Court noted:

"Appellees argue that it makes no difference whether Birmingham Oxygen or Southeastern Medical enforces the non-competition agreement, since Barney C. Eller wholly owns both corporations and it was him with whom Edwards and Russell dealt. This contention is without merit. A corporation is an entity created by compliance with statutory requirements. A corporation has the right to sue

49

and be sued just like a natural person. Alabama Constitution, Article XII, § 240; Code 1975, § 10-2A-20(2). A corporation, just like an individual, must enforce its own rights and privileges."

408 So. 2d at 93.

Here, it is clear, based upon the language of the 2004 settlement agreement, that the right to payment that was created under that agreement accrued to EAG, LLC, to whom the payment was explicitly due. After -- and only after -- payment had been made to EAG, LLC, did the agreement explain how it was to be divided among the members thereof. Thus the agreement evinces an intent only to directly benefit EAG, LLC, which is also the only party entitled to sue if the promised payment was not made.[18] Russell, supra. Consequently, only an indirect benefit was bestowed on Berks and Rowe pursuant to the agreement, solely in their capacity as principals of EAG, LLC. Therefore, the trial court also did not err in concluding that Berks lacked the ability to enforce the 2004 settlement agreement as a third-party beneficiary thereof.

### 3. Rowe's Intervention

---

[18]Presumably, however, if EAG, LLC, had, in fact, received the funds and had failed to distribute them equally to both Rowe and Berks, Berks would have had a derivative claim against EAG, LLC.

Finally, the defendants contend that the trial court erred in granting Rowe's request to intervene on behalf of EAG, LLC, pursuant to Rule 24, Ala. R. Civ. P. More specifically, they assert that the grounds cited by Rowe in his intervention motion were insufficient to sustain the trial court's ruling in that Rowe's interests were purportedly adequately represented by the defendants' opposition to the plaintiffs' complaint and further that Rowe's postintervention position constituted a breach of the members' duties imposed on Rowe by § 10A-5-3.03, Ala. Code 1975. In sum, the defendants argue that by permitting Rowe's intervention on allegations including that EAG, LLC, constituted an ongoing entity,[19] but permitting Rowe to successfully represent, in subsequent pleadings, that EAG, LLC, had been dissolved in July 2006, the trial court "erroneous[ly] refus[ed] to apply § 10A-5-3.03(f)(1-3), and the law on judicial estoppel." Defendants' brief, at p. 56. See, e.g., Ex parte First Alabama Bank, 883 So. 2d 1236, 1241 (Ala. 2003) ("'The doctrine of judicial estoppel "applies to preclude a party

---

[19]The plaintiffs explain that this initial position was taken by all parties based on the continued existence of EAG, LLC, in public records.

51

from assuming a position in a legal proceeding inconsistent with one previously asserted."'" (quoting Jinright v. Paulk, 758 So. 2d 553, 555 (Ala. 2000), quoting in turn Selma Foundry & Supply Co. v. Peoples Bank & Trust Co., 598 So. 2d 844, 846 (Ala. 1992))).

This appears to be a nonissue. As set out in the facts above, Rowe's intervention was the result of a "stipulation and agreement reached in open court," by all parties to the underlying proceeding, who apparently conceded that "Rowe ... [should be] made a party ... and ... aligned as a Plaintiff...." It thus appears that the defendants' own claim that the intervention was improper would be precluded by the very judicial-estoppel principles they raise on appeal. First Alabama Bank, supra. Alternatively, the defendants, by their conduct below, invited the error of which they now complain. See Ex parte King, 643 So. 2d 1364, 1366 (Ala. 1993) ("[The doctrine of invited error] provides that a party may not complain of error into which he has led the court." (citing Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 157, 130 So. 2d 178, 182 (1961))).

In addition, to the extent that the defendants' claim represents a challenge to the trial court's failure to immediately grant the defendants' motion seeking to vacate the trial court's intervention order, I also fail to see any error in that regard. Not only was Rowe aligned as a plaintiff from the outset, as the plaintiffs note, but also, as both sets of parties represent in their respective briefs, the trial court did, in fact, subsequently vacate the order permitting Rowe's intervention. Thus, any potential relief from the trial court's order permitting the alleged erroneous intervention of Rowe has already been obtained, and the resulting challenge to the intervention order is moot. See Woods v. SunTrust Bank, 81 So. 3d 357, 363 (Ala. Civ. App. 2011).

## Conclusion

Based on the foregoing, I conclude that the trial court's judgment was entered without error and is, in all aspects, due to be affirmed. Because I see little, if any, precedential value in a published opinion, I concurred in the Court's decision to affirm the trial court's judgment without an opinion and I now concur in overruling the application for rehearing.

MOORE, Chief Justice (dissenting).

Martin Berks, Environmental Attorneys Group, LLC ("EAG"), and Environmental Attorneys Group, P.C., apply for rehearing of this Court's no-opinion affirmance of the trial court's summary judgment. Because I believe that the trial court improvidently entered a summary judgment, I would grant the application for rehearing and reverse this Court's decision on original submission. Therefore, I respectfully dissent.

## I. Facts and Procedural History

In 2001, attorneys Martin Berks and Mark Rowe formed EAG to pursue toxic-tort litigation. Berks and Rowe were the sole members of the limited-liability company, and each retained a 50% membership and voting interest. Gregory Cade was an associate attorney with EAG with no membership interest.

In 2004 Cade left EAG, which then sued him for allegedly attempting to steal its clients and pending toxic-tort cases. Cade and EAG settled that dispute in mediation, agreeing that Cade could take with him certain toxic-tort cases and establishing a formula to divide any fees that might be derived from those cases. Also in 2004, Berks and Rowe went

their separate ways, forming new individual firms and doing no new business through EAG.

In 2006, Rowe sued Berks for Rowe's share of the assets of EAG. As part of a mediated settlement, Berks and Rowe agreed to dissolve EAG. Rowe also accepted a cash payment in lieu of his claim to fees from EAG's pending toxic-tort cases. In 2007 Rowe joined the law firm where Cade was working -- Environmental Litigation Group, P.C. ("ELG"). In November 2008 one of the cases covered by the 2004 settlement agreement between EAG and Cade settled, generating a $2.4 million fee. After Cade received the settlement proceeds, he and ELG sued Berks and EAG seeking to avoid paying EAG any portion of the fee. Cade and ELG argued that Berks had breached the 2004 settlement agreement, thus relieving Cade of the duty to perform his portion of that contract. Berks and EAG counterclaimed, seeking a 50% share of the fee pursuant to the 2004 settlement agreement.

Rowe moved to intervene on behalf of EAG, arguing that as a 50% member he had an interest in the $2.4 million fee. However, Rowe later switched his position, arguing that as a member of EAG he had not authorized EAG to hire counsel to

defend Cade and ELG's action and to counterclaim for the $1.2 million fee. Rowe further moved to disqualify counsel for EAG on the ground that he had not voted to permit EAG to sue for the withheld fee. Thus, Rowe effectively became an adversary of EAG, though still nominally a member.

The trial court granted the motion to disqualify counsel, thus disabling EAG from defending the suit and asserting its counterclaims. The court also denied Berks's personal claim to the assets of EAG as a successor in interest, thus preventing him from seeking a portion of the $2.4 million fee as a third-party beneficiary. The trial court subsequently entered a summary judgment for the plaintiffs based on the reasoning in its order disqualifying counsel. With EAG unable to counterclaim for a portion of the fees, Cade and ELG then dismissed their own remaining claims, concluding the case.

## II. Standard of Review

"We review a trial court's summary judgment de novo, giving the judgment no presumption of correctness." Baldwin v. Branch, 888 So. 2d 482, 484 (Ala. 2004). A summary judgment is proper when there is "no genuine issue as to any material fact

and ... the moving party is entitled to a judgment as a matter of law." Rule 56, Ala. R. Civ. P.

### III. Analysis

The trial court, relying on a portion of the Business and Nonprofit Entities Chapter of the Alabama Code,[20] ruled that EAG ceased to exist in 2008, two years after Rowe and Berks agreed to dissolve it. But the part of the Code applicable to limited-liability companies ("the LLC Code") specifically provides that a limited-liability company ("LLC") has a "reasonable time" in which to wind up its affairs. § 10A-5-7.03, Ala. Code 1975. A specific statute in the LLC Code would ordinarily prevail over a parallel rule in the Business Corporations Code, even if construed to apply also to LLCs. "Where statutes in pari materia are general and specific, the

---

[20]Sections 10A-1-9.21 and -9.22, Ala. Code 1975 (formerly §§ 10-2B-14.06 and -14.07), provide only a two-year survival of claims against a dissolved domestic entity. They do not similarly bar claims asserted by the entity. By contrast, predecessor § 10-2A-203, Ala. Code 1975, cited by the trial court in its order, eliminated any "remedy to or against such corporation." (Emphasis added.) The court equated § 10-2A-203, superseded in 1994 and thus not applicable to this case, with §§ 10-2B-14.06 and -14.07 in its limiting effect on claims brought by the dissolved entity. Section 10A-5-8.01(g) (former § 10-12-45), Ala. Code 1975, generally applies "restrictions imposed on professional corporations by the Alabama Professional Corporation Law" to limited-liability companies that render professional services.

more specific statute controls the more general statute." Crawford v. Springle, 631 So. 2d 880, 882 (Ala. 1993). Surely it was reasonable to keep the entity in existence beyond two years to "wind up" the receipt of fees from cases pending at the time dissolution was undertaken.

Additionally, Rowe's effort to prevent EAG from asserting entitlement to fees arising from the 2004 settlement agreement is a forbidden act of disloyalty to EAG. A member in a member-managed LLC owes a fiduciary duty of loyalty to the LLC.

> "A member's duty of loyalty to a member-managed limited liability company and its members is limited to each of the following:
>
>     "....
>
>     "(2) To refrain from dealing with the limited liability company in the conduct or winding up of the limited liability company's business as or on behalf of a party having an interest adverse to the limited liability company."

§ 10A-5-3.03(f), Ala. Code 1975 (emphasis added). An LLC member also has an "obligation of good faith and fair dealing" in activities in relation to the LLC. § 10A-5-3.03(h), Ala. Code 1975. Further, the governing documents of an LLC may not eliminate the duty of loyalty or the obligation of good faith

and fair dealing. §§ 10A-5-3.03(l)(2) and -3.03(l)(4), Ala. Code 1975.

Rowe successfully argued to the trial court that, as a member of EAG with a 50% voting interest, he could prevent the entity from taking legal action to collect funds owed to it. He also successfully argued that by withholding his vote he could prevent EAG from defending itself in the action brought by Cade and ELG. But Rowe's duty of loyalty to EAG precluded his taking action either for himself or for another "adverse to the limited liability company." ELG, the law firm for which both Cade and Rowe worked, obviously had an interest adverse to EAG in not sharing the settlement funds Cade had received from cases that were the subject of the 2004 settlement agreement. By using his vote as a member of EAG to prevent EAG from claiming funds that derived from the 2004 settlement agreement between EAG and Cade, Rowe violated his duty of loyalty to EAG.

Because "limited liability companies are creatures of statute," Harbison v. Strickland, 900 So. 2d 385, 389 (Ala. 2004), "operating agreements of limited liability companies ... incorporate the provisions of the statutes that allow for

the creation of such agreements." 900 So. 2d at 391. "Thus, the plain language of § 10-12-21(l), Ala. Code 1975 [the predecessor statute to § 10A-5-3.03(l)], does not allow an operating agreement for a limited liability company ... to eliminate a manager's duty of loyalty ...." 900 So. 2d at 390. See also Polk v. Polk, 70 So. 3d 363, 371 (Ala. Civ. App. 2010) (citing Harbison).

Rowe was not at liberty to employ his voting power to prevent EAG from litigating its right to fees derived from the 2004 settlement agreement. His nonwaivable fiduciary duty of loyalty precludes his effort to act contrary to the interests of EAG. By failing to read the duty of loyalty into the operating agreement for EAG, the trial court entered a summary judgment on a ground forbidden by the LLC Code.

## IV. Conclusion

By applying a general two-year winding-up provision from the Business Corporations Code rather than the specific "reasonable time" provision from the LLC Code, the trial court wrongly held that EAG ceased to exist as a legal entity prior to Cade and ELG's filing their action against it. By failing to read the operating agreement in light of the statutory duty

60

of loyalty, the trial court mistakenly permitted Rowe to stymie EAG's capacity to defend itself. Because both rulings were legally incorrect, I would grant the application for rehearing, reverse the trial court's summary judgment, and remand the case for EAG to litigate its counterclaims.